S95A1932. LIVINGSTON v. THE STATE.
(467 SE2d 886)

BENHAM, Chief Justice.

This appeal is from Livingston's conviction for aggravated assault on a police officer. It came to this Court seeking construction of the Fifth Amendment to the U. S. Constitution and asserting various errors in the conduct of the trial. Although we do not reach the constitutional issue asserted by Livingston (see Division 2, below), we agree with Livingston, for the reasons stated in Division 1, that he is entitled to a new trial.

In the early morning hours of March 4, 1994, a law enforcement officer who stopped a truck driven by Livingston was shot in the chest. The bullet was stopped by the officer's bullet-proof vest, and the officer made his way back to his patrol car as more shots were fired. The officer drew his weapon and pointed it at Livingston, who was then standing outside the truck holding a pistol. Livingston obeyed the officer's command to drop the pistol and lie on the ground. Livingston, who was 15 years old, and another juvenile (G. A. B.) were arrested at the scene. Livingston's case was later

transferred to superior court, where he was convicted on May 10, 1995.

1. We address first the trial court's denial of Livingston's motion for continuance made on the day before trial began. The first indictment in this case was dismissed in March 1995 because of problems with the transfer order from juvenile court, but the case was not removed from its place on the trial calendar for early May. Present counsel for Livingston made an appearance in the case in late April 1995. A second indictment was returned on May 2, and the trial still remained set for May 8, although that date became the date for arraignment and motions hearings, with trial to commence on May 9. Defense counsel argued in support of his motion for continuance that there had been insufficient time to prepare, that the timing of the indictment was done specifically to frustrate Livingston's right to discovery, and that the prosecution had failed to comply with proper discovery requests. The motion was denied and counsel announced "not ready" for trial the next day. The trial proceeded nonetheless.

Livingston's first argument is that the prosecution deliberately waited to indict him until six days before the scheduled trial date for the express purpose of frustrating his right to discovery. The district attorney denied that accusation, and there is no evidence in the record to support the allegations of bad faith. In fact, the district attorney did not use subterfuge to frustrate discovery, but simply denied any duty to comply with counsel's request. The timing of the indictment did not, of itself, require the granting of Livingston's motion for continuance. *Pope v. State*, 140 Ga. App. 643 (1) (231 SE2d 549) (1976).

The second asserted right to the continuance was based on the State's alleged failure to comply with the discovery provisions in OCGA § 17-16-1 et seq. That statute was enacted in 1994 and went into effect on January 1, 1995. Although the statute was not in effect when the first indictment in this case was returned, it was in effect when the second one was returned on May 2, 1995.

Discovery requests in this case were filed the day after the return of the second indictment. They could not have been filed earlier because there was no indictment pending — the statute applies only to cases in which "at least one felony offense is charged . . ." (OCGA § 17-16-2 (a)), and before the indictment on May 2, 1995, Livingston was not formally under a felony charge.

In the requests, Livingston asked for the location of witnesses, statements of witnesses, all oral statements by Livingston, an opportunity to inspect photographs and tangible objects, and a summary of the basis for an expert opinion. These were all matters covered by the discovery statute, so Livingston was entitled to them. They were not, however, provided. The noncompliance with the discovery requests

was one of the grounds asserted in support of the motion for a continuance.

> Granting or refusing a continuance is a matter within the sound discretion of the trial court, and absent a clear showing of abuse, this court will not reverse for refusing to grant a continuance. [Cits.] "Mere shortness of time . . . does not ipso facto show a denial of the rights of an accused. Something more is required." [Cits.]

*Pope v. State*, supra. This is a case in which "something more" has been shown. Defense counsel followed the dictates of the statute and the prosecutor failed to do so, relying on prior law and denying that the new statute changed his obligation to make discovery. The trial court, though it did not explain the basis for denying the continuance, apparently accepted the prosecutor's too-limited interpretation of the statute and forced Livingston to trial six days after indictment without the discovery to which he was entitled. The effect of that ruling was that counsel did not have a meaningful opportunity to examine the evidence against Livingston.

While the appellate courts have a duty to ensure that defendants are not brought to trial with such haste that the defense is prejudiced, we also have a duty to prevent defendants from delaying proceedings by frivolous motions and requests. "For this reason, [appellate courts] will find the denial of requests for continuance in situations such as this to be error only with great reluctance." *Williams v. State*, 144 Ga. App. 410 (1) (241 SE2d 261) (1977). We must reluctantly conclude, as did the Court of Appeals in *Williams*, that this is a case in which the denial of the motion for continuance was an abuse of discretion requiring reversal. Under the particular circumstances of this case — the short time between indictment and trial and the prosecutor's failure to comply with the new discovery statute, based on a misunderstanding of its requirements — the trial court's denial of the continuance was an error which entitles Livingston to a new trial.

2. The issue which Livingston asserts requires constitutional construction involves an inculpatory statement he gave when questioned after his arrest. He contends that the statement was inadmissible because his mother had invoked his right under the Fifth Amendment to have counsel present during interrogation. When Livingston's mother came to the jail, she had a conversation with the sheriff in which she said, in response to a question from the sheriff concerning whether the family could afford an attorney, that she could not and would need one. She and Livingston subsequently took part in an interrogation, at the outset of which Livingston and his mother signed forms waiving his right to counsel during questioning.

We do not reach the issue of constitutional construction urged by Livingston, whether the parent of a juvenile can invoke the juvenile's right to counsel during custodial interrogation, because the record and existing case law require a holding that there was no invocation of Livingston's rights under the Fifth Amendment.[1] A review of the record, and particularly of Mrs. Livingston's testimony, establishes that the context of the conversation with the sheriff regarding counsel was Livingston's Sixth Amendment right to counsel, not his right under the Fifth Amendment to have counsel present during questioning. Under those circumstances, Livingston's right to counsel during interrogation was not invoked. *State v. Hatcher*, 264 Ga. 556 (448 SE2d 698) (1994). That being so, there was no error in admitting the statement Livingston gave during interrogation.

3. A detention hearing was conducted in juvenile court some 76 hours after the arrest. Livingston's appointed counsel waived the statutory seventy-two-hour limit for the hearing and also waived the ten-day limit for an adjudicatory hearing. The juvenile court eventually conducted a hearing which was both an adjudicatory hearing for the other juvenile arrested with Livingston and a transfer hearing for Livingston. The other juvenile was adjudicated delinquent and Livingston's case was transferred to superior court. Livingston contended below and still contends that the juvenile court had no authority to transfer his case to superior court because the juvenile court lost its jurisdiction when it failed to conduct a detention hearing within seventy-two hours of his arrest and to conduct a dispositional hearing within ten days of the filing of a delinquency petition. The superior court decided this issue against Livingston, finding that Livingston's appointed counsel expressly waived both time limitations. Livingston argues that the waivers were ineffective because the attorney who made them did not discuss the issue with Livingston first.

With regard to the 72-hour hearing, we believe no waiver was necessary. The timing of the hearing is mandated by OCGA § 15-11-21 (c) (1):

> If a child alleged to be delinquent is not . . . released, an informal detention hearing shall be held promptly and not later than 72 hours after he is placed in detention or shelter care to determine whether his detention or shelter care is required under Code Section 15-11-18, provided that, if the 72 hour time period expires on a Saturday, Sunday, or legal holiday, the hearing shall be held on the next day which is not a Saturday, Sunday, or legal holiday.

---

[1] This Court will not decide constitutional issues if the case can be decided on other grounds. *Columbus Bd. of Tax Assessors v. Tom's Foods*, 264 Ga. 309 (444 SE2d 771) (1994).

Livingston was arrested in the early hours of Friday, March 4, 1994. The 72-hour period after his detention would have expired, at the latest, at 5:00 a.m. on Monday, March 7. Since that is a time when the court was closed for "a Saturday, Sunday, or legal holiday, . . ." the hearing conducted at 9:00 a.m., Monday, March 7, was timely.

The ten-day hearing, however, was clearly outside that time period, so the question of waiver is directly at issue. The attorney serving as Livingston's counsel at that time[2] expressly waived the ten-day limit. Livingston contends that counsel could not effectively waive the ten-day period without first discussing it with Livingston and getting his knowing and intelligent waiver of his right to the hearing. We need not address the merits of his contention, however, because Livingston and his new counsel appeared at and participated in the transfer hearing without raising the issue. In *Cox v. Dept. of Human Resources*, 148 Ga. App. 43 (250 SE2d 839) (1978) (overruled on other grounds, *Chancey v. Dept. of Human Resources*, 156 Ga. App. 338 (274 SE2d 728) (1980)), the untimeliness of the hearing was waived by appearing and failing to raise the procedural defect. In the present case, even if the express waiver of Livingston's first attorney is discounted, there was a subsequent waiver when Livingston appeared with new counsel at a continued transfer hearing and opposed the transfer without raising the issue of the timeliness of the first hearing or the effectiveness of the waiver. *Cox*, supra.

Livingston argues that cases such as *Cox*, supra, involving deprivation rather than delinquency, are not applicable to the procedural issues in delinquency cases. However, "[t]he procedural requirements of the Code are applicable when a child is taken into custody or temporarily detained, regardless of whether it is for alleged delinquency, unruliness, or deprivation. [Cit.]" *Sanchez v. Walker County Dept. of Family &c. Svcs.*, 237 Ga. 406 (229 SE2d 66) (1976).

The record in this case adequately demonstrates compliance with or waiver of the procedural rights of which Livingston now contends he was deprived.

4. The first indictment in this case was dismissed because of technical deficiencies in the first transfer order from juvenile court. Prior to that dismissal, the juvenile court had entered an amended order remedying the first order's deficiencies. Livingston now argues that the amended order was a nullity because jurisdiction was in the superior court at the time. That, he argues, rendered the subsequent re-indictment void, which would require reversal of his conviction. That argument is inconsistent with the dismissal of the first indict-

---

[2] He was appointed, but was replaced by another attorney who was in turn replaced by Livingston's present counsel.

ment, with which Livingston has taken no issue. If the initial transfer order was so defective that the superior court could not assume jurisdiction of the case, then the juvenile court retained jurisdiction until it issued a proper transfer order. That being so, the second transfer order, the correctness of which has not been challenged on this appeal, was within the authority of the juvenile court and the second indictment was valid.

5. Livingston filed a motion before trial seeking dismissal of the prosecution on the ground of double jeopardy. He contended then and contends now that the procedure the juvenile court used in considering transfer of the case to superior court constituted an adjudication of delinquency which barred further prosecution for the offenses involved. Had there been such an adjudication, it would have had the impact Livingston contends the transfer hearing had. *In re T. E. D.*, 169 Ga. App. 401, 402 (2) (312 SE2d 864) (1984). The record, however, does not support Livingston's contentions regarding the conduct and effect of the transfer hearing.

The documents giving notice of the transfer hearing and the orders of transfer all recite that transfer was being considered prior to consideration of the delinquency petition on its merits. Both transfer orders stated that there was reasonable cause to believe that Livingston committed the crimes alleged. The transcript of the hearing reflects that all participants were fully aware that, as to Livingston, the proceedings were for the purpose of determining whether his case should be transferred to superior court. Just as the juvenile's admissions in *In re M. E. J.*, 260 Ga. 805 (401 SE2d 254) (1991), were not accepted as evidence on the merits of the delinquency petition, the evidence at the transfer hearing in this case was not admitted on the merits of the delinquency petition, but on the issue of transfer.

Livingston's complaint that he was prejudiced by the combination of his transfer hearing with G. A. B.'s adjudicatory hearing is not meritorious. The juvenile court's limitations on the scope of testimony only reflect the nature of the hearing: it was, as to Livingston, not a hearing on the merits of the delinquency petition, but on the issue of whether transfer to superior court was proper, and the trial court was not required to consider evidence on the merits. Id. We conclude in this case, as we did in *In re M. E. J.*, supra, that the transfer hearing did not put Livingston in jeopardy so as to trigger the protection of the prohibition against double jeopardy.

6. The final issue is the denial of a motion for mistrial made when G. A. B. volunteered during direct examination that Livingston, in response to a police question at the scene, admitted firing the shot that struck the law enforcement officer. Since the State's question was not designed to elicit that testimony and the defense is now aware of the statement, this is not an issue likely to recur on retrial and it need

not be resolved here. *Guilford v. State*, 258 Ga. 253 (2) (368 SE2d 116) (1988).

*Judgment reversed. All the Justices concur, except Thompson, J., who concurs in Divisions 2, 3, 4, 5, 6 and in the judgment.*

DECIDED MARCH 15, 1996 —
RECONSIDERATION DENIED MARCH 28, 1996.

*Robert A. Pinal,* for appellant.

*Fredric D. Bright, District Attorney, Vanessa Flournoy, Assistant District Attorney, Michael J. Bowers, Attorney General, Wesley S. Horney, Assistant Attorney General,* for appellee.