## S98A1834. COLUMBUS v. THE STATE.
(513 SE2d 498)

SEARS, Justice.

The appellant, Larry Columbus, appeals from his conviction for the felony murder of Melinda Colbert.[1] On appeal, Columbus raises numerous issues, including that his trial counsel was ineffective; that the trial court erred in denying his motion for a continuance; and that the trial court erred in failing to charge on lawful act, unlawful manner involuntary manslaughter. Finding no merit to these contentions, we affirm.

On March 21, 1997, at approximately 4:00 a.m., police responded to an emergency call at the home of the appellant, Larry Columbus, and the victim, Melinda Colbert. Police found Colbert slumped on the floor of the bedroom, with her head at the foot of the bed and her feet at the head of the bed. The police also found that Colbert had suffered a knife wound just over her right collar bone. Colbert died from this injury.

Columbus and Colbert had been living together for about two years. Columbus gave a statement to police on the evening of the crime. He stated that that night he had been visiting a girlfriend, where he "did some cocaine, smoked some marijuana, and was drinking alcohol." He added that when he returned home about 2:00 a.m., Colbert accused him of cheating on her, and they had an argument and a physical altercation, which resulted in Colbert tearing Columbus's undershirt and scratching his chest. The officer who took Columbus's statement testified that Columbus referred to this incident as "Round One," and that Columbus separated this incident from the actual stabbing. The officer added that Columbus told him that sometime later, Colbert approached him with a knife by walking across the bed on her knees. Columbus stated that she swung the knife at him, and that when she did so, she fell off the bed and stabbed herself. The officer testified that with Columbus's direction, he (the officer) drew a diagram of the crime scene that indicated, among other things, the direction the victim fell off the bed. That direction showed the victim falling with her head toward the foot of the bed. Although Columbus later testified at trial that the victim first fell toward the head of the bed, and that he then helped Colbert

---

[1] The crimes occurred on March 21, 1997, and Columbus was indicted in May 1997. Columbus was found guilty on September 24, 1997, and was sentenced to life in prison that same day. Columbus filed a motion for new trial on October 24, 1997, and the court reporter certified the trial transcript on November 15, 1997. Columbus filed an amended motion for new trial on April 29, 1998, and the trial court denied Columbus's motion for new trial, as amended, on June 25, 1998. Columbus filed his notice of appeal on July 24, 1998, and the appeal was docketed in this Court on August 13, 1998. The appeal was submitted for decision on briefs on October 5, 1998.

stand up and laid her down with her head toward the foot of the bed, the officer who drew the diagram with Columbus testified that Columbus never gave him this explanation.

One of the officers who investigated the crime scene testified that there were blood stains at various places in the room and on Colbert's clothing that were inconsistent with Columbus's statement. The officer testified, in particular, that there was blood in several places by the victim's feet that could not have gotten there if the victim had merely fallen toward the foot of the bed and stabbed herself. There was also evidence that two of the officers investigating the crime rolled Colbert's body to one side, and that, as they did so, a knife fell out of the folds of bed covers that were piled partially under her, but mostly next to her. One of the officers testified that the victim's body was not located in a position where the knife could have been in either of her hands.

The medical examiner testified that the wound Colbert sustained was about two inches deep; that when the wound was made, the sharp edge of the knife was in the 9:00 o'clock position, and that the blunt edge was in the 3:00 o'clock position; that the knife was moving slightly front to back as it entered her body; and that the knife crossed the midline of the body and severed Colbert's subclavian vein, causing her death. Because of the location of the wound above the victim's collar bone, because of the angle of the knife as it entered the victim's body, and because, according to the medical examiner, a person's natural reflex would be to move the knife away from her body as she fell or as she felt pain from the knife, the medical examiner testified that it was unlikely that the victim could have created the wound that she sustained by falling and stabbing herself. He also testified that he was 98 percent sure that the stabbing was a homicide.

At trial, Columbus testified on direct examination that when he came home about 2:00 a.m, he and Colbert argued, but that he then went to sleep. He added that he was awakened later in the night when Colbert turned on the light in the bedroom, and came across the bed at him, walking on her knees. Columbus testified that he got up and stood by the bed, and that Colbert grabbed his undershirt and tore it, scratching him with her fingernails. He stated that he then grabbed her and "snatched her straight to the bed so I wouldn't have to hit her." According to Columbus, he then let go of her, and she laid down on the bed. Columbus testified that he did not see a knife during this altercation with the victim. Columbus added that he then told the victim, "don't lay your ass down now," "you want to fight . . . get on back up." Colbert then got up, and approached Columbus by walking across the bed on her knees. Columbus testified that Colbert "then had the knife." He added that he thought she was going to

swing the knife at him; that he stepped back from the bed; that she swung at him, and fell on the floor; and that he thought she stabbed herself with the knife. He added that she was never close enough to him to stab him with the knife. In testimony that was inconsistent with the diagram that Columbus helped the police officer draw during his interrogation, Columbus testified that the victim fell with her head toward the head of the bed. He added, however, that he helped her stand up and noticed blood on her stomach, and that he then laid her down with her head toward the foot of the bed. On cross-examination, when the State questioned Columbus regarding how the knife could have been found in the folds of bed covers that were located under Colbert and that made it likely that she was not holding the knife when she fell, Columbus stated that he believed that Colbert was stabbed when he first threw her on the bed, and that she then did not fall on the knife when she fell off the bed.

1. Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found Columbus guilty of felony murder beyond a reasonable doubt.[2]

2. After his trial, Columbus obtained new counsel for appeal, and filed a motion for new trial, contending, among other things, that his trial counsel was ineffective. The trial court denied Columbus's motion for new trial. In his first enumeration of error, Columbus contends that the trial court erred in this ruling. We disagree.

(a) To prevail on a claim of ineffective assistance of counsel, a defendant has the burden to prove that his "counsel's actions fell below an objective standard of reasonableness and that, but for the alleged ineffective act, there is a reasonable probability that the result of the proceeding would have been different."[3] Moreover,

> a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.[4]

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[3] *Lajara v. State* 263 Ga. 438, 440 (435 SE2d 600) (1993). Accord *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).
[4] *Strickland*, 466 U. S. at 697.

(b) Columbus first contends that his trial counsel was ineffective because he failed to subpoena certain witnesses who Columbus asserts would have exonerated him.

In this regard, Columbus contends that his trial counsel could have subpoenaed crime lab personnel who could have testified that the victim had a blood-alcohol level of .16 grams. Columbus further contends that if the jury had had this information, it would have served to exonerate him by explaining how the victim could have fallen on the knife and not had sufficient dexterity to move it out of the way when it started to enter her body. We conclude that Columbus has failed to demonstrate that if trial counsel had subpoenaed a crime lab witness, there is a reasonable probability that the outcome of the trial would have been different. First, there was evidence before the jury that the victim had been drinking, as Columbus himself testified to that effect. Second, the state's medical examiner testified at trial that "if someone were under the influence of alcohol or drugs," it would not make a difference in his evaluation of the cause of death in this case. Third, the medical examiner's conclusion that it was unlikely the victim could have stabbed herself was not based solely on the reasoning that a person falling with a knife would try not to fall on it and would divert it away from her body if she felt pain from the knife, but also on the location of the wound and angle of entry of the wound. Finally, Columbus failed to show at the motion for new trial hearing that he had any witness to contradict the medical examiner's testimony regarding the effects of alcohol on the cause of death. For these reasons, we conclude that Columbus has failed to show a reasonable probability that the outcome of the trial would have been different if trial counsel had subpoenaed a witness from the crime lab.[5]

We reach a similar conclusion with regard to other witnesses that Columbus alleges could have been subpoenaed by trial counsel. One witness[6] has apparently never been located, and Columbus therefore has failed to demonstrate that the witness would testify at trial, and thus has failed to carry his burden to show prejudice.[7] Another witness's testimony (that of Columbus's neighbor) would have been cumulative of the testimony of a police officer who spoke with Columbus at the crime scene. We therefore conclude that Columbus has failed to establish a reasonable probability that the outcome of the trial would have been different if this witness had

---

[5] See *Goodwin v. Cruz-Padillo*, 265 Ga. 614, 615 (458 SE2d 623) (1995).

[6] Columbus alleges that this witness would have testified that the victim showed her a knife on the afternoon of the crimes and told her that she was going to "get Columbus" with it when he got home.

[7] *Cruz-Padillo*, 265 Ga. at 617-618.

been called to testify.[8] Finally, although Columbus contends that his trial counsel should have subpoenaed an expert who would have refuted the testimony of the state's expert regarding the manner of death, Columbus has failed to demonstrate that such a witness exists and that such a witness would have testified favorably at trial. Columbus therefore has failed to carry his burden to demonstrate prejudice.[9]

(c) Columbus's trial counsel requested a charge on unlawful act involuntary manslaughter, with simple assault as the underlying unlawful act,[10] and the trial court gave the requested charge. Columbus now contends that trial counsel was ineffective for failing to request that the trial court charge simple battery, instead of simple assault, as the underlying unlawful act. However, because the evidence, including the same evidence that Columbus relies on to contend that trial counsel should have requested a charge on simple battery as the unlawful act, supports the charge that counsel requested on simple assault,[11] and because the jury rejected involuntary manslaughter based upon simple assault as a verdict option, we conclude that Columbus has failed to show a reasonable probability that the outcome of the trial would have been different if counsel had requested such a charge.[12]

(d) Columbus contends that trial counsel was ineffective for failing to request a charge on self-defense. We conclude, however, (1) that counsel was not deficient in failing to request the charge, as it was not warranted by the evidence, and (2) that Columbus has failed to demonstrate that he was prejudiced by counsel's failure to request the charge.

Columbus contends that this charge was warranted by his testimony that when the victim approached him on the bed the first time, she grabbed his shirt and he tugged her down on the bed to force her to let go of his shirt. He stated that he did not see a knife, but that she must have been holding it, and must have fallen on it when he tugged her to the bed. Because this testimony does not establish that he stabbed the victim to protect himself from deadly harm, but that she was accidentally killed when he tugged her to the bed, the testimony did not warrant a charge on self-defense, and trial counsel did not provide ineffective assistance in failing to request it.[13]

Moreover, because the jury was properly charged on accident

---

[8] See *Bagwell v. State*, 270 Ga. 175, 178-179 (508 SE2d 385) (1998).

[9] See *Cruz-Padillo*, 265 Ga. at 616-617.

[10] See OCGA § 16-5-3 (a).

[11] See *Roberts v. State*, 165 Ga. App. 826, 827 (1) (302 SE2d 732) (1983).

[12] See *McCord v. State*, 268 Ga. 842, 845 (8) (493 SE2d 129) (1997); *Strickland v. Washington*, 466 U. S. at 687.

[13] See *Martin v. State*, 268 Ga. 682, 685 (6) (492 SE2d 225) (1997).

and unlawful act involuntary manslaughter, thus permitting the jury to consider Columbus's explanation that the victim stabbed herself; because Columbus's claim of self-defense also depended upon that explanation; because the jury rejected that explanation in finding against accident and involuntary manslaughter; and because the strength of the evidence against Columbus, based in part upon his inconsistent stories to the police, militates against that explanation, we conclude that Columbus has failed to prove a reasonable probability that the outcome of the trial would have been different if defense counsel had requested and the trial court had given a charge on self-defense.

(e) Columbus contends that because he admitted in his statement to police that he had consumed alcohol, cocaine, and marijuana on the evening of the crime, trial counsel was ineffective in failing to file a pre-trial motion challenging the admissibility of the statement on the ground that he was too intoxicated to voluntarily waive his rights.

Even assuming, however, that trial counsel's performance was deficient in this regard, Columbus has failed to demonstrate the prejudice required under *Strickland v. Washington*. Before evidence of Columbus's statement was introduced at trial, the trial court held a *Jackson-Denno* hearing, and the police officer who took Columbus's statement testified that he read Columbus his *Miranda* rights; that Columbus then read them himself; that Columbus told the officer that he understood his rights; that Columbus signed the waiver form; that Columbus told him he had consumed the foregoing drugs, but that Columbus was coherent and did not appear to be under the influence of "anything at th[at] time"; and that Columbus freely and voluntarily made the statement in question. At the motion for new trial hearing on ineffectiveness of counsel, Columbus failed to offer any evidence that would have led to the conclusion that he did not make his statement voluntarily. Columbus has thus failed to prove that, if counsel had filed a pre-trial motion challenging the voluntariness of Columbus's statement, the outcome of the *Jackson-Denno* hearing or of the trial itself would have been different. We thus conclude that Columbus has failed to carry his burden to show prejudice under *Strickland v. Washington*.

(f) Contrary to Columbus's contention, we conclude that the testimony of the officer who interviewed Columbus after the crime did not improperly shift any burden of proof to Columbus,[14] and that Columbus's trial counsel therefore was not deficient in failing to object to it. Moreover, Columbus has also failed in this regard to

---

[14] See *McCord v. State*, 268 Ga. at 843 (3).

prove the prejudice prong of his ineffective assistance claim.[15]

(g) Columbus further contends that his trial counsel was ineffective for failing to object to the medical examiner's testimony that he was 98 percent sure the victim's death was a homicide. Although it is problematic whether the medical examiner should have been allowed to give this testimony,[16] we conclude that given that the medical examiner properly testified that it would have been difficult for the victim to inflict the wound in question on herself by falling onto a knife; given that the forensic evidence strongly militates against Columbus's testimony about how the victim was killed; and given the inconsistencies between Columbus's statement to the police and his testimony at trial, we conclude that Columbus has failed to show that if the medical examiner's conclusion about the stabbing being a homicide had been excluded from evidence, there is a reasonable probability that the outcome of the trial would have been different. We thus conclude that Columbus has failed to prove that his trial counsel was ineffective in this regard.[17]

(h) We find no merit to Columbus's last contention regarding ineffectiveness.[18]

3. Columbus also contends that the trial court erred in failing to charge the jury on lawful act, unlawful manner involuntary manslaughter pursuant to OCGA § 16-5-3 (b). This contention, however, has been decided adversely to Columbus on numerous occasions.[19]

4. Columbus next contends that the trial court erred in refusing to grant his motion for a continuance that was made before the start of trial on September 22, 1998. For the reasons that follow, we find no merit to this enumeration of error.

The record shows that Columbus was arraigned on July 8, 1997, at which time he was represented by trial counsel, and that trial counsel was timely provided with a list of the State's witnesses at arraignment. Moreover, the record contains a certificate of service stating that the State's discovery material was mailed to defense counsel on August 14, 1997. Defense counsel, however, told the prosecutor on September 17, 1997, that he had not yet received the State's discovery material. As the case was on the trial calendar for

---

[15] See *McCord v. State*, 268 Ga. at 845; *Strickland v. Washington*, 466 U. S. at 687.

[16] See *Maxwell v. State*, 262 Ga. 73, 76-77 (414 SE2d 470) (1992).

[17] See *McCord v. State*, 268 Ga. at 845; *Strickland v. Washington*, 466 U. S. at 687.

[18] In this contention, Columbus simply alleges that trial counsel was ineffective because he "failed to renew his objections or renew his motion for directed verdict at the conclusion of the trial, thereby failing to preserve the above-listed issues [i.e., the other grounds asserted in support of his ineffectiveness claim] for appeal."

[19] *Lamb v. State*, 267 Ga. 464, 465 (4) (479 SE2d 719) (1997); *McLendon v. State*, 259 Ga. 778, 780 (5) (387 SE2d 133) (1990); *Johnson v. State*, 259 Ga. 235, 236 (3) (378 SE2d 859) (1989); *Thompson v. State*, 257 Ga. 481, 482 (4) (361 SE2d 154) (1987); *Saylors v. State*, 251 Ga. 735 (3) (309 SE2d 796) (1983).

Monday, September 22, the prosecutor provided defense counsel with all the discovery material on Thursday morning, September 18, and had his investigator meet with defense counsel to go over the State's file. At the hearing on the motion for a continuance, which was held before the beginning of trial on September 22, defense counsel testified that he had prepared for trial on Thursday, Friday, Saturday, and Sunday, working exclusively on Columbus's case for about ten hours each day during that time period. Defense counsel was also able to interview the State's three main witnesses before trial.

In reviewing a trial court's denial of a motion for a continuance, this Court will not "reverse a trial court's decision on a motion for continuance except upon a clear abuse of the trial court's discretion."[20] Initially, we note that this is not a case in which the record establishes that the State failed to comply with its discovery duties.[21] Moreover, the record establishes that the defense had a copy of the State's list of witnesses well in advance of trial; that defense counsel had been representing Columbus for many months; that defense counsel spoke with Columbus on numerous occasions before trial; that defense counsel interviewed the State's three main witnesses before trial; that, once defense counsel told the prosecutor that he had not received the State's discovery material, the prosecutor immediately turned over the material and had his investigator go over the State's file with defense counsel; and that defense counsel then focused his attention solely on Columbus's trial for four days. For these reasons we cannot conclude that the trial court abused its discretion in denying Columbus's motion for a continuance.

Moreover, to be entitled to a new trial based upon the denial of his motion for a continuance, Columbus had the burden to show that he was harmed by that denial.[22] Having reviewed the record, we cannot conclude that Columbus made this showing.

5. Columbus contends that the trial court erred in prohibiting him from asking the medical examiner about the effects of alcohol on the victim. For the reasons that follow, we find no merit to this enumeration.

The record shows that defense counsel began to ask the medical examiner a question that was based upon the victim having a blood-alcohol level of .16 grams, but that before defense counsel could finish the question, the prosecutor objected on the ground that there

---

[20] *Davie v. State*, 265 Ga. 800, 801 (2) (463 SE2d 112) (1995).
[21] See *Williams v. State*, 201 Ga. App. 384, 386-387 (3) (411 SE2d 316) (1991). See also *Livingston v. State*, 266 Ga. 501, 502-503 (1) (467 SE2d 886) (1996) (where prosecutor failed to comply with the defendant's discovery request, and the defendant thus did not obtain the discovery to which he was entitled before trial, the trial court erred in denying the defendant's motion for a continuance).
[22] *Woodbury v. State*, 264 Ga. 31, 32 (4) (440 SE2d 461) (1994).

was no evidence that the victim had such a blood-alcohol level. Columbus then acknowledged that he would not be able to put forward such evidence, but stated that it was important for the medical examiner to have this information to understand how it would influence his opinion about what happened in the victim's bedroom that night.

For an expert to give his opinion based upon a certain state of facts, those facts must be supported by evidence admitted into the record.[23] Because there was no evidence admitted at trial that the victim's blood-alcohol content was .16, the trial court did not err in precluding defense counsel's question. Moreover, Columbus has failed to show how his inability to ask this question harmed his defense at trial. In this regard, we note (1) that Columbus testified at trial that the victim had been drinking on the night of the crime, and (2) that defense counsel did elicit testimony from the medical examiner regarding whether a factor such as a victim's intoxication would make a difference in his evaluation of the manner of death. The medical examiner responded that it would not.

For these reasons, we find no merit to this enumeration.

6. Contrary to Columbus's contention, the trial court did not err in giving the jury a recharge, in writing, only of the further instructions requested by the jury.[24]

7. Columbus contends that the trial court erred in failing to charge the jury on the law of self-defense. We find no error. First, Columbus did not request that the trial court give this charge, and as self-defense was not Columbus's sole defense, the trial court did not err in failing to charge on it.[25] Moreover, we have already concluded that the charge was not warranted by the evidence.[26]

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 15, 1999.

*Paul J. McCord,* for appellant.

*J. Tom Morgan, District Attorney, Barbara B. Conroy, Sarah C. Sullivan, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Daniel G. Ashburn, Assistant Attorney General,* for appellee.

---

[23] *Leonard v. State,* 269 Ga. 867, 870-871 (3) (506 SE2d 853) (1998).
[24] *Patterson v. State,* 264 Ga. 593, 594 (2) (449 SE2d 97) (1994).
[25] See *Connor v. State,* 268 Ga. 656, 657 (2) (492 SE2d 669) (1997).
[26] See Division 2 (c), supra.