In the Supreme Court of Georgia

Decided: September 22, 2014

S14A0637. GEIGER v. THE STATE.

MELTON, Justice.

Following a jury trial, Tomorris Geiger was found guilty of murder, felony murder, armed robbery, kidnapping, and various other offenses in connection with the shooting deaths of cousins Dewayne and John Bacon.[1] On appeal, Geiger contends that the evidence was insufficient to support the verdict; that

_____

[1]On November 5, 2004, Geiger was indicted, along with Charles Mattox and Terrance Smith, for two counts of malice murder, eight counts of felony murder (with armed robbery, aggravated assault, kidnapping, and hijacking a motor vehicle as the underlying felonies), two counts of armed robbery, two counts of aggravated assault, two counts of kidnapping, and two counts of hijacking a motor vehicle. Following a November 14-17, 2005 jury trial, Geiger was found guilty on all counts. The trial court thereafter sentenced Geiger to consecutive terms of life imprisonment for the malice murder of Dewayne, the malice murder of John, and the armed robberies of both victims. Geiger also received two twenty-year concurrent sentences for the kidnappings of John and Dewayne as well as two twenty-year concurrent sentences for each count of hijacking. The felony murder convictions were vacated by operation of law (Malcolm v. State, 263 Ga. 369, 372 (1993)), and all other counts were merged for sentencing purposes. Geiger filed a motion for a new trial on December 19, 2005, which he amended with new appellate counsel on August 16, 2013. The trial court denied the motion on October 3, 2013. Geiger timely filed his appeal on October 7, 2013 and submitted for decisions on the briefs.

the trial court erred by admitting similar transactions and improper character evidence; that the trial court erred by denying Geiger's second request for a continuance; and that his trial counsel was ineffective. For the reasons that follow, we affirm.

1.Viewed in the light most favorable to the verdict, the record reveals that, on May 6, 2003, Dewayne agreed to give Geiger a ride. The next day, Geiger and co-defendant Charles Mattox held Dewayne hostage and robbed him. They then lured John to where they were holding Dewayne by making Dewayne call John under the pretense that Dewayne needed a ride. John drove from his home in order to pick up Dewayne. When John encountered Geiger and Mattox, however, Geiger forced Dewayne and John into a grave and shot both of them in the head, killing them.

Geiger was arrested on May 23, 2003 at his sister's home for a matter unrelated to the Bacon murders. A nine millimeter pistol was found in the room where Geiger was hiding. Two years later, in August 2005, a shell casing matching the pistol found at the time of Geiger's arrest was discovered at the scene of John and Dewayne's murders.

In July of 2003, only a few days after finding the Bacon cousins' stolen

vehicles, investigators discovered Dewayne and John's bodies in a clandestine grave in the woods behind an abandoned mobile home. Weeks earlier, in nearby Bryan County, investigators had encountered debris along the highway, including John's tennis shoes, some duct tape, shovels, and old soda bottles. DNA recovered from the bottles matched co-defendant Mattox, leading investigators to believe that Mattox may have been connected to John and Dewayne's disappearances. Mattox and Geiger had also been linked to a number of past crimes, including the car jackings and robberies of four victims. At trial, the State presented these prior victims' testimonies as similar transactions evidence.

Additionally, co-defendant Terrance Smith testified that he witnessed Geiger force John and Dewayne into a grave and then fire his gun repeatedly. Smith's story was corroborated by Shakeya Brewton, who wrote a letter to her boyfriend–an inmate– which stated Geiger admitted to shooting the Bacon cousins.

This evidence was sufficient to enable a rational trier of fact to find Geiger guilty of the crimes for which he was convicted beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Geiger contends the trial court erred by allowing the State to introduce evidence of four similar transactions.[2] We disagree.

In general, evidence of independent offenses committed by a defendant is irrelevant and inadmissible in a trial for a different crime. Stephens v. State, 261 Ga. 467 (6) (405 SE2d 483) (1991). In some cases, however, "[e]vidence of similar crimes (or transactions) is admissible where its relevance to show identity, motive, plan, scheme, bent of mind and course of conduct, outweighs its prejudicial impact." Guyton v. State, 206 Ga. App. 145, 145-146 (1) (424 S.E.2d 87) (1992). More specifically,

> [e]vidence of a similar transaction may be admitted if the State shows that: (1) it seeks to introduce the evidence not to raise an improper inference as to the accused's character, but for some appropriate purpose which has been deemed to be an exception to the general rule of inadmissibility; (2) there is sufficient evidence to establish that the accused committed the independent offense or act; and (3) there is a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter.

(Citation and punctuation omitted.) Matthews v. State, 294 Ga. 50, 52 (751

---

[2] We note that, because this case was tried before January 1, 2013, Georgia's old Evidence Code applies here. Under our new Evidence Code, the admissibility of this sort of evidence would be governed by OCGA § 24-4-404 (b).

4

SE2d 78) (2013). Additionally, "'a transaction does not have to mirror every detail in order to authorize its admission; rather, the proper focus is upon the similarities between the incidents and not upon the differences.' [Cit.]" Daniels v. State, 281 Ga. 226, 228 (1) (637 SE2d 403) (2006).

With these principles in mind, the record shows that, in the summer of 2001, Anthony Sally agreed to meet Geiger and Mattox, who then forced him at gunpoint to drive his car to the woods, where they stole $200 and marijuana from him. Next, in December of 2002, Geiger held a gun to Kevin McCoy's head and forced him to drive to Mattox's house, where the defendants took his cell phone, shoes, wallet, and car. In April 2003, Hope Alvarez followed Geiger out of a lounge before multiple men jumped him. Mattox threatened Alvarez with a gun before the men robbed him and ran. Finally, in April 2003, Geiger and Mattox asked Lorenzo Walker for a ride to a gas station. Once in the car, Geiger produced a pistol, forced Walker onto the street, and stole his car. All of these independent offenses are sufficiently similar to the charged crimes in this case in that they involved the use of a handgun to subdue the victims, cooperation between co-defendants Mattox and Geiger, the common motive of robbery, and luring the victims to the crime scenes where they were assaulted

5

and robbed. We find no error in the trial court's decision to admit this evidence at trial. See, e.g., Collum v. State, 281 Ga. 719 (4) (642 SE2d 640) (2007).

3. Geiger argues that the trial court erred by denying his second request for a continuance in order to have the shell casing found at the murder scene independently tested and to secure an additional witness. We disagree.

This Court will not reverse a trial court's decision to deny a motion for a continuance absent a showing of a clear abuse of discretion. Columbus v. State, 270 Ga. 658, 665 (4) (513 SE2d 498) (1999). Furthermore, "to be entitled to a new trial based upon the denial of [a] motion for a continuance, [a defendant has] the burden to show that he was harmed by that denial." (Footnote omitted.) Id. The record reveals that Geiger received the State's ballistics report on September 2, 2005, which confirmed that the shell casing found at the crime scene in 2005 matched the gun discovered at Geiger's sister's home during his arrest in 2003. The trial court granted Geiger's first request for a continuance on September 26, 2005 in order to give Geiger additional time to have the shell casing independently tested. However, he failed to have the casing tested at any time prior to the rescheduled November 14, 2005 trial date. Nor did he have the shell casing tested at any time prior to the motion for a new trial hearing in order

to show at the hearing that any independent testing results would have been favorable to him at his trial.[3] Because of this, Geiger cannot show harm from the trial court's denial of his second motion for a continuance on the basis that he was allegedly improperly denied the opportunity to independently test the shell casing. See Williams v. State, 317 Ga. App. 248, 256 (3) (730 SE2d 726) (2012) (defendant failed to show prejudice from denial of his motion for a continuance where he presented no evidence at motion for new trial hearing to indicate that his defense would have benefitted from further questioning a witness regarding the location of material evidence).

With respect to Geiger's claim that the second continuance was warranted because he needed time to secure an additional witness, this claim is also without merit. Geiger contends that Latoya Brewton's testimony allegedly would have contradicted the anticipated testimony of Shakeya Brewton at trial. However, during trial, Geiger's counsel informed the court that Latoya Brewton's testimony was no longer needed and that she would not be called.

---

[3]Indeed, to this day, there is no evidence of record that Geiger has ever had the shell casing independently tested, despite the fact that he had secured funding for independent testing more than two weeks before his November 14, 2005 trial.

Because Geiger admitted at trial that he no longer needed this witness, which obviated the need for a continuance in order to bring this witness to the trial, he cannot now be heard to complain that the trial court somehow erred by denying his request for a continuance. Carnett's, Inc. v. Hammond, 279 Ga. 125, 130 (6) (610 SE2d 529) (2005) ("A party cannot complain of a judgment, order, or ruling that his own conduct produced or aided in causing").

4. Geiger further contends that the trial court erred by allowing improper character evidence to be admitted at trial. Specifically, Geiger claims that the trial court erred by (a) allowing him to enter the courtroom while wearing shackles, and (b) allowing references to his prior incarceration and his attempts to evade police custody to be made at trial.

(a) Although, "[a]bsent justifying circumstances, the defendant normally should not be seen by the jury handcuffed in the courtroom or courthouse" (Gates v. State, 244 Ga. 587, 593 (2) (261 SE2d 349) (1979)), "[t]he failure, through an oversight, to remove shackles from a prisoner for a short time after proceedings have commenced, or any technical violation of the rule prohibiting shackling, not prejudicial to him, is not ground for a new trial . . . ." Starr v. State, 209 Ga. 258, 260 (5) (a) (71 SE2d 654) (1952). Here, before the jury was

8

selected, Geiger entered the courtroom in civilian clothes that obscured the view that any of the prospective jurors may have had of his leg irons, and the leg irons were removed outside of the view of the prospective jurors. Although Geiger's counsel moved for a new jury panel to be appointed, he did not inquire during voir dire about whether any of the prospective jurors had seen Geiger's shackles, and he "made no effort to determine on voir dire whether[, if they had seen the defendant's shackles,] the momentary 'technical violation of the rule prohibiting shackling may have had any prejudicial effect on the [prospective] jurors. [Cit.]'" Rhodes v. State, 264 Ga. 123 (441 SE2d 748) (1994) Furthermore, despite the fact that the trial court offered to give a curative instruction, which would have been the appropriate remedy here (see Starr, supra, 209 Ga. at 260 (5) (b)), Geiger declined the trial court's offer to give curative instructions. Under these circumstances, we find no error in the trial court's denial of Geiger's motion have a new jury panel appointed. See Rhodes, supra.

(b) The record reveals that Geiger did not object to any of the testimony regarding his prior incarceration and attempts to evade police custody. He has therefore waived review of this issue on appeal. See Earnest v. State, 262 Ga. 494 (1) (422 SE2d 188) (1992).

9

5. Finally, Geiger contends that his trial counsel was ineffective for (a) failing to locate Latoya Brewton, (b) neglecting to have the shell casing independently tested, and (c) failing to object to the admission of improper character evidence.

> In order to succeed on his claim of ineffective assistance, [Geiger] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. Strickland v. Washington, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the Strickland test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); Fuller v. State, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, "'[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" Robinson v. State, 277 Ga. 75, 76 (586 SE2d 313) (2003).

Wright v. State, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

(a) The record shows that counsel made a reasonable strategic decision not to call Latoya Brewton as a witness to refute Shakeya Brewton's testimony. Specifically, because Shakeya Brewton denied at trial that Geiger had ever told her details of the crime, this obviated the need for Latoya Brewton to refute her testimony. Geiger's claim of ineffective assistance therefore fails in this instance. See, e.g., Washington v. State, 294 Ga. 560, 566 (3) (755 SE2d 160)

10

(2014) (Counsel's strategic decisions, such as which witnesses to present, "do not amount to deficient performance unless they are so unreasonable that no competent attorney would have made them under similar circumstances") (citations omitted).

(b) As shown in Division 3, supra, Geiger did not present any evidence at the motion for new trial hearing that additional testing of the shell casing would have produced evidence that would have been favorable to him at his trial. Accordingly, he cannot show prejudice from his counsel's failure to have the shell casing independently tested. <u>Sutton v. State</u>, – Ga. – (6) (e) (Case No. S14A0941; decided June 16, 2014).

(c) As an initial matter, the testimony relating to Geiger's 2003 arrest was properly admitted, as "[e]vidence that is relevant and material to an issue in a case is not rendered inadmissible because the defendant's character is incidentally put in issue." (Citation omitted.) <u>Ross v. State</u>, 255 Ga. 1, 6 (2) (a) (334 SE2d 300) (1985). Geiger was arrested in May 2003 while on the run from police regarding a matter that was unrelated to the crimes at issue in this case. However, the gun that was found at the time of Geiger's 2003 arrest was connected to the Bacon murders after a shell casing was found at the scene of

that crime in 2005. Geiger admitted to police that the gun was his, and the statements that were admitted at trial regarding the manner in which Geiger had acquired the gun were based on Geiger's own admissions to police. Despite the fact that Geiger was being arrested for a different crime at the time that the gun was found in 2003, which incidentally placed his character in issue, the statements relating to that arrest and the gun found in connection with it were relevant to the crimes presently at issue, as they explained Geiger's connection to the gun that was used in the murders of the Bacon cousins. Accordingly, Geiger's counsel's failure to object to this admissible evidence did not amount to ineffective assistance. Hayes v. State, 262 Ga. 881, 884 (3) (c) (426 SE2d 886)(1993) ("Failure to make a meritless objection cannot be evidence of ineffective assistance").

Further, with respect to the few remaining statements regarding Geiger's previous incarceration that may have incidentally placed his character in issue, Geiger cannot show prejudice from the admission of these statements in light of the overwhelming evidence of his guilt. Kitchens v. State, 289 Ga. 242 (2) (b) (710 SE2d 551) (2011).

Judgement affirmed. All of the Justices concur.