In the Supreme Court of Georgia

Decided: March 7, 2016

S15A1357. GRAVES v. THE STATE.

HUNSTEIN, Justice.

Appellant Demarcus Graves was convicted of malice murder and related offenses in connection with the shooting death of Samuel Landers. Graves now appeals his convictions on the grounds that the evidence was insufficient, that the trial court improperly admitted similar transaction evidence, and that he was entitled to a mistrial after the State elicited improper character evidence. Though we find no merit in Graves' enumerations, we do find error in certain aspects of Graves' sentences, and we must, therefore, vacate and remand for resentencing.[1]

_____

[1]In March 2011, a Fulton County grand jury returned an indictment charging Graves as follows: malice murder; felony murder predicated on armed robbery; felony murder predicated on possession of a firearm by a convicted felon; aggravated assault with a deadly weapon; criminal attempt to commit armed robbery; possession of a firearm during the commission of a felony; and possession of a firearm by a convicted felon. A trial was held March 21-29, 2011, and the jury returned guilty verdicts on all counts. The trial court sentenced Graves to life imprisonment for malice murder and five years consecutive for possession of a firearm during the commission of a felony; although the trial court purported to merge all the other offenses, as discussed in Division 4, infra, this was error. Graves filed a timely motion for new trial on

Viewed in a light most favorable to the jury's verdicts, the evidence adduced at trial established as follows. In September 2006, law enforcement responded to a 911 call reporting a shooting at the Colony Square Apartment Complex in Fulton County, Georgia; the caller reported seeing two men running from the shooting, a taller man with dreadlocks or braids, and a shorter man who wore his hair in twists. At the scene, law enforcement officers discovered Landers in the driver's seat of his well-maintained Chevrolet El Camino, dead from multiple gunshot wounds. In February 2007, Landers' family offered a $5,000 reward in an effort to help solve the murder. Shortly thereafter, Jabarie Glover came forward and met with investigators. According to Glover, Graves and a second man, Jasper Adams, had admitted to him that they decided to rob Landers after he arrived at the apartment complex to buy marijuana. Glover reported that Adams got into the passenger side of Landers' vehicle with a gun, that Adams and Landers wrestled for the gun, and that Graves, upon seeing the struggle, walked over to the vehicle, grabbed the gun from the men and shot

April 11, 2011, and he amended that motion on June 14, 2013. The trial court held a hearing on Graves' amended motion on July 19, 2013, and denied it on October 31, 2013. Graves filed his notice of appeal on November 12, 2013, and this appeal was docketed to the September 2015 term of this Court and was thereafter submitted for decision on the briefs.

Landers.  In February 2008, federal inmate Autrey Love reported to investigators that Graves had made incriminating statements to him while both men were in federal custody in Atlanta.  According to Love, Graves admitted that, while selling drugs at the Colony Square apartments, he and Adams decided to rob the victim of his El Camino.  According to Love, Graves reported that Adams entered the passenger side of Landers' vehicle with a gun, the two men struggled for the weapon, Graves grabbed the gun through the open driver-side window during the struggle, and Graves "dumped" the gun into Landers.

Graves and Adams were subsequently indicted on malice murder and other offenses in connection with Landers' murder; Adams negotiated a plea agreement with the State, and he agreed to testify against Graves.  At trial, Glover recanted his statements, and his prior interviews with investigators were admitted as prior inconsistent statements. Love, on the other hand, testified regarding his conversations with Graves and read for the jury a letter that he had sent to investigators regarding Graves' admissions.  Adams testified that, on the day of the murder, he and Graves were at the apartment complex selling drugs when Landers arrived to purchase marijuana; according to Adams, Graves wanted Landers' El Camino and instructed Adams, then 16-years old, to retrieve

3

a pistol stashed in an empty apartment. According to Adams, after he was armed, he jumped in the passenger side of Landers' vehicle and demanded that Landers exit the vehicle; Landers refused, the men struggled, and Graves ended up grabbing the gun and killing Landers. The State also presented testimony that, at the time of the murder, Graves wore his hair in twists and Adams wore dreadlocks. The jury also heard evidence that in May 2006, just months before the murder, Graves was discovered with a concealed handgun and 14 grams of crack cocaine while parked in his El Camino at a property adjacent to the apartment complex where the murder occurred.

1. The evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Graves was guilty of the crimes of which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). Though Graves contends that the evidence was insufficient because the State's witnesses were impeached or incredible, it is axiomatic that resolving evidentiary conflicts and assessing witness credibility are within the exclusive province of the jury. See Hampton v. State, 272 Ga. 284 (1) (527 SE2d 872) (2000).

2. Graves next argues that the trial court erred in admitting testimony

4

regarding the May 2006 incident involving the concealed pistol and crack cocaine.

"In general, evidence of independent offenses committed by a defendant is irrelevant and inadmissible in a trial for a different crime." Pareja v. State, 286 Ga. 117, 119 (686 SE2d 232) (2009). In certain cases, however, "'[e]vidence of similar crimes (or transactions) is admissible where its relevance to show identity, motive, plan, scheme, bent of mind and course of conduct, outweighs its prejudicial impact.'" Geiger v. State, 295 Ga. 648, 650 (2) (763 SE2d 453) (1992).[2] However,

> [b]efore evidence of prior crimes is admissible, the trial court must determine that the State has affirmatively shown that: (1) the State seeks to admit evidence of the independent offenses or acts for an appropriate purpose; (2) there is sufficient evidence that the accused committed the independent offenses or acts; and (3) there is sufficient connection or similarity between the independent offenses or acts and the crimes charged so that proof of the former tends to prove the latter.

Palmer v. State, 271 Ga. 234, 239 (8) (a) (517 SE2d 502) (1999) (citing Williams v. State, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991)). "[A]

---

[2] Graves was tried before January 1, 2013, and, thus, Georgia's old Evidence Code applies here. Under the new Evidence Code, the admissibility of this type of evidence would be governed by OCGA § 24-4-404(b).

transaction does not have to mirror every detail in order to authorize its admission; rather, the proper focus is upon the similarities between the incidents and not upon the differences." Lamb v. State, 273 Ga. 729, 731 (1) (546 SE2d 465) (2001). In reviewing the trial court's admission of similar-transaction evidence, this Court accepts that court's factual findings unless they are clearly erroneous, and we review for abuse of discretion the trial court's ultimate decision to admit evidence that satisfies the three-prong test announced in Williams. See Reed v. State, 291 Ga. 10 (3) (727 SE2d 112) (2012).

The State offered the evidence regarding the May 2006 incident for the purposes of showing bent of mind and course of conduct, both of which were appropriate purposes for such evidence as the law existed at the time of Graves' trial. See, e.g., Collins v. State, 273 Ga. 93, 94-95 (538 SE2d 47) (2000) (noting bent of mind and course of conduct are proper purposes).[3] Further, through the testimony of an officer with the Atlanta Police Department and records of an earlier conviction, the State presented ample evidence that, in May 2006, Graves

---

[3] Our new Evidence Code allows admission of "evidence of other crimes, wrongs, or acts" for purposes "including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." OCGA § 24-4-404(b).

was a convicted felon in possession of both a concealed weapon and 14 grams of crack cocaine. Finally, the record supports the trial court's finding that there was sufficient similarity between the May 2006 incident and the charged offenses so that proof of the former tended to prove the latter. Specifically, the May 2006 incident occurred less than six months before the murder, it involved Graves sitting in his El Camino in approximately the same location as the murder and at the same time of day, Graves was armed and in possession of a significant quantity of drugs at that time, and he was in the presence of an individual who was involved in the drug transaction in this case. "Here, the trial court's factual findings were supported by the record, and the court acted well within its discretion in concluding that the similar transaction evidence satisfied the Williams test." Matthews v. State, 294 Ga. 50, 52 (3) (a) (751 SE2d 78) (2013).

3. Finally, Graves argues that the trial court erroneously refused to grant a mistrial after Autrey Love thrice referenced a "gun case" that Graves was facing while he was in federal custody.[4]

_____

[4] The State argues on appeal, as it did below, that the "gun case" to which Love was referring was the May 2006 incident which served as the basis for the similar-transaction evidence; Graves recognizes this possibility on appeal, and the record

A trial court's denial of a motion for mistrial based on the improper admission of bad character evidence is reviewed for abuse of discretion by examining factors and circumstances, including the nature of the statement, the other evidence in the case, and the action taken by the court and counsel concerning the impropriety.

(Citation omitted.) Rucker v. State, 293 Ga. 116, 118 (2) (744 SE2d 36) (2013).

As an initial matter, because Graves failed to renew his motion for mistrial after the trial court denied that motion and took other corrective action, this argument is waived. See Wilkins v. State, 261 Ga. App. 856 (2) (583 SE2d 905) (2003). Moreover, one of the three references to a "gun case" arose from a letter that was admitted and read to the jury without objection; in fact, the record demonstrates that the letter was read to the jury with trial counsel's permission. Graves was not entitled to a mistrial on the basis that the jury heard improper character evidence where Graves himself permitted the jury to hear such evidence. See Gordon v. State, 273 Ga. 373 (3) (541 SE2d 376) (2001) (no error with respect to improper character evidence where it was cumulative of other evidence that was admitted without objection). Finally, while Graves faults the State for Love's repeated "gun case" references, the record plainly

_____

provides no insight into the nature of Love's references.

8

demonstrates that the references were non-responsive answers to questions asked by the State and that, in each instance, the trial court took corrective action; the trial court did not abuse its discretion in denying Graves' motion for mistrial under these circumstances. See Hansley v. State, 267 Ga. 48 (3) (472 SE2d 305) (1996) (mistrial properly denied because a non-responsive answer which may negatively impact a defendant's character does not improperly place the defendant's character at issue at trial); Eagle v. State, 264 Ga. 1 (2) (440 SE2d 2) (1994) (same).

4. While the evidence was sufficient to sustain Graves' conviction and we find no merit to Graves' enumerations of error, we do find error in his sentencing. During sentencing, the trial court purported to merge two felony murder counts with the malice murder count; the trial court then purported to merge two independent felonies – namely, count 6, criminal attempt to commit armed robbery and count 8, possession of a firearm by a convicted felon – with the two felony murder counts. This was error. The felony murder counts did not merge with the malice murder count, but instead, they were vacated by operation of law because they involved the same victim as the malice murder count. See Cowart v. State, 294 Ga. 333 (2) (751 SE2d 82) (2013); McClellan

9

v. State, 274 Ga. 819 (1) (a) (561 SE2d 82) (2002). Accordingly, while aggravated assault properly merged with malice murder as a matter of fact, see Culpepper v. State, 289 Ga. 736, 738 (2) (a) (715 SE2d 155) (2011), there were no felony murder counts into which the two independent felonies could merge as a matter of law. Malcolm v. State, 263 Ga. 369 (5) (434 SE2d 479) (1993) (once a felony murder count has been vacated, the underlying felony cannot merge into the felony murder count); see also Leeks v. State, 296 Ga. 515 (7) (2015). Therefore, the trial court is required to vacate that portion of its sentencing order purporting to merge the two independent felonies and impose proper sentences on those counts.

Judgment affirmed in part and vacated in part, and case remanded. All the Justices concur.

10