S13A1170. MATTHEWS v. THE STATE.
(751 SE2d 78)

NAHMIAS, Justice.

Appellant Jarvis Matthews was found guilty of malice murder and other crimes in connection with the shooting death of Juan Manuel Ramirez. Appellant contends that the trial court erred by: (1) admitting his sentencing order from a prior conviction; (2) admitting similar transaction evidence, allowing the State to urge the jury to use the evidence to prove Appellant's character, and improperly instructing the jury regarding its use; and (3) preventing Appellant from presenting evidence implicating another person in the crimes. We affirm.[1]

1. Viewed in the light most favorable to the verdict, the evidence presented at trial showed the following. On August 30, 2002, Ramirez, Francisco Zoniga-Rivera, and Markeisha Scruggs arranged to buy about six pounds of marijuana from Appellant for about $3,000. They met him in the parking lot of an apartment complex where he claimed his mother lived. Appellant asked to see the money before producing the drugs, and after the cash was counted, Ramirez asked to see the

---

[1] The crimes occurred on August 30, 2002. On May 26, 2006, Appellant was indicted in Fulton County for malice murder, two counts of felony murder, armed robbery, aggravated assault with a deadly weapon, and possession of a firearm during the commission of a felony. After trial from April 14-16, 2009, the jury found Appellant guilty of all charges. The trial court sentenced him to serve life in prison for malice murder and a consecutive term of five years for the firearm offense. The felony murder verdicts were vacated by operation of law, and the remaining verdicts merged. On April 17, 2009, Appellant filed a motion for new trial, which he amended on April 11, 2011. After an evidentiary hearing, the trial court denied the motion on December 16, 2011. Appellant filed a timely notice of appeal, and the case was docketed in this Court for the April 2013 term and submitted for decision on the briefs.

marijuana. Appellant said it was in his mother's apartment and that only Ramirez should go with him to get it, but Zoniga-Rivera and Scruggs insisted on going as well. The three buyers followed Appellant into the breezeway of one of the apartment buildings, where he pulled out a gun and told Ramirez to give him the money. When Ramirez refused, Appellant shot him. As Zoniga-Rivera and Scruggs ran out of the breezeway in opposite directions, Appellant shot Ramirez again. As Ramirez lay on the ground, Appellant went through his pockets and took the money before running away. Ramirez died of a gunshot wound to the torso.

At trial, Scruggs testified for the State. Both she and a woman who lived at the apartment complex identified Appellant as the shooter, and another witness testified that she saw a black male (like Appellant) shoot the victim, go through his pockets, and then run away from the scene. The State also introduced, as a similar transaction, evidence of Appellant's involvement in a fatal shooting in 2001, which occurred after he lured the victims to an apartment complex by offering to sell wheel rims for several thousand dollars before trying to rob them, including evidence of Appellant's 2003 convictions for felony murder and other crimes related to that shooting.

When viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted and sentenced. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) (" 'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.' " (citation omitted)).

2. Appellant contends that the trial court erred by admitting the sentencing order from his prior convictions on some of the same charges, because that order was irrelevant. At trial, to prove Appellant's involvement in the 2001 shooting, the State tendered its Exhibit 39, which consisted of certified copies of the indictment, verdict, and sentencing order related to the 2001 incident. When asked if Appellant had any objections to the admission of this exhibit, his counsel replied, "None." Appellant therefore failed to preserve his current objection for review on appeal. See *Sampson v. State*, 282 Ga. 82, 83 (646 SE2d 60) (2007). In any event, it is highly unlikely that the admission of the sentencing order contributed to the jury's guilty verdict, and thus any error was harmless. See *Robbins v. State*, 277 Ga. App. 843, 845 (627 SE2d 810) (2006); *James v. State*, 227 Ga. App. 907, 909 (490 SE2d 556) (1997).

3. Appellant raises several arguments related to the similar transaction evidence.

(a) First, Appellant argues that the trial court erred in admitting evidence regarding the 2001 shooting as a similar transaction. Evidence of a similar transaction may be admitted if the State shows that:

> (1) it seeks to introduce the evidence "not to raise an improper inference as to the accused's character, but for some appropriate purpose which has been deemed to be an exception to the general rule of inadmissibility"; (2) "there is sufficient evidence to establish that the accused committed the independent offense or act"; and (3) "there is a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter."

*Moore v. State*, 290 Ga. 805, 807 (725 SE2d 290) (2012) (quoting *Williams v. State*, 261 Ga. 640, 642 (409 SE2d 649) (1991)).

> When reviewing the trial court's factual findings regarding whether the state satisfied the [*Williams*] three-prong test . . . we apply the "clearly erroneous" standard [of review]. The decision to admit similar transaction evidence which satisfies the three-prong test is within the trial court's discretion and will not be disturbed absent an abuse of that discretion.

*Reed v. State*, 291 Ga. 10, 14 (727 SE2d 112) (2012) (citations omitted). Here, the trial court's factual findings were supported by the record, and the court acted well within its discretion in concluding that the similar transaction evidence satisfied the *Williams* test.

The State offered the evidence of Appellant's involvement in the 2001 shooting for the purposes of showing his intent, course of conduct, and common scheme or plan, all of which were appropriate purposes under Georgia law at the time of Appellant's trial. See *Collins v. State*, 273 Ga. 93, 93-94 (538 SE2d 47) (2000) (holding that intent and course of conduct are proper purposes); *Turner v. State*, 281 Ga. 647, 648-649 (641 SE2d 527) (2007) (holding that proper purposes include common scheme and course of conduct).[2] The State

---

[2] Appellant was tried in 2009 under Georgia's old Evidence Code, under which courts routinely admitted similar transaction evidence for purposes such as "bent of mind" or "course of conduct." See, e.g., *Felder v. State*, 273 Ga. 844, 846 (545 SE2d 918) (2001). Georgia's new Evidence Code, which applies to trials conducted after January 1, 2013, see Ga. L. 2011, p. 99,

also presented ample evidence that Appellant committed the independent offense by offering eyewitness testimony about the 2001 shooting and a certified copy of Appellant's conviction for the shooting.

Finally, the 2001 incident involved a fatal shooting that occurred when Appellant lured the victims to an apartment complex by offering to sell them expensive wheel rims and then tried to rob them, while the 2002 incident charged in this case involved a fatal shooting that occurred when Appellant lured the victim to an apartment complex in the same neighborhood to sell him drugs and then tried to rob him. The trial court's finding that there was sufficient similarity between the 2001 incident and the crimes charged so that proof of the former tends to prove the latter was not clearly erroneous. Thus, the similar transaction evidence was properly admitted.

(b) Appellant next argues that the trial court erred in allowing the State to urge the jury during closing argument to consider the similar transaction evidence for character purposes. Appellant did not object to the closing argument, however, and he therefore forfeited his right to raise this issue on appeal. See *Braithwaite v. State*, 275 Ga. 884, 885 (572 SE2d 612) (2002). But

> even absent procedural waiver, [Appellant] cannot prevail in his complaints about improper argument by the State. A closing argument is to be judged in the context in which it is made. What is more, a prosecutor is granted wide latitude in the conduct of closing argument, the bounds of which are in the trial court's discretion; within the scope of such latitude is the prosecutor's ability to argue reasonable inferences from the evidence. . . .

*Scott v. State*, 290 Ga. 883, 885 (725 SE2d 305) (2012) (citations omitted).

When considered in context, the prosecutor's statements about which Appellant now complains may be fairly construed as arguments that the similar transaction evidence showed Appellant's intent and course of conduct, and Appellant therefore would not have been entitled to a mistrial even if he had made a timely objection. See id. See also *McKibbins v. State*, 293 Ga. 843 (750 SE2d 314) (2013)

---

§ 101, allows admission of "[e]vidence of other crimes, wrongs, or acts" for purposes "including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." OCGA § 24-4-404 (b).

("When an argument is ambiguous, [the Court is] reluctant to assume that the prosecutor intended [the] most damaging meaning." (citation omitted)).

(c) Appellant also maintains that the jury instructions on similar transaction evidence were erroneous because the trial court told the jury that it could consider such evidence for the purpose of showing the identity of the perpetrator of the crimes being tried, instead of limiting the use of the evidence to the purposes articulated by the State before trial — intent, course of conduct, and common scheme or plan. However, the court properly admitted the similar transaction evidence; the court gave the pattern jury instruction for such evidence; and the purposes listed by the court for the use of such evidence were all relevant to this case and appropriate under Georgia law at the time. In these circumstances, the trial court's failure to limit the use of similar transaction evidence to the purposes listed by the State is not reversible error. See *Looney v. State*, 232 Ga. App. 828, 829 (503 SE2d 79) (1998); *Jordan v. State*, 230 Ga. App. 560, 561 (497 SE2d 48) (1998).

4. Appellant finally contends that the trial court erred in precluding him from presenting evidence implicating Markeisha Scruggs in the crimes. At trial, Appellant sought to introduce testimony by Scruggs' former roommate, Sarah Lambert, that Scruggs feared retaliation from the victim's brother because Scruggs was involved in setting up the fake drug deal that resulted in the victim's death. But the trial court correctly sustained the State's objection because Lambert acknowledged that she had learned this information from Francisco ("Kiko") Montoya. See *Johnson v. State*, 260 Ga. 17, 19 (389 SE2d 238) (1990) ("It would have been error to allow [the witness] to testify over objection about a crime of which he had neither personal knowledge nor information directly from one of the defendants themselves."). Notably, Scruggs and Montoya both testified at trial, but Appellant did not ask either of them any questions about Scruggs' supposed involvement in the robbery.

Moreover, evidence implicating another person in the crimes being tried must at least "raise a reasonable inference of the defendant's innocence" for its exclusion to harm the defendant. *Klinect v. State*, 269 Ga. 570, 573 (501 SE2d 810) (1998). Here, in addition to Scruggs, one eyewitness identified Appellant as the shooter and another testified that the shooter was a man. Even assuming arguendo that Scruggs were somehow involved in arranging the robbery, that would not make Appellant innocent of the crimes of which he was convicted, and nothing in the record indicates that Scruggs, instead of Appellant, was the shooter. See *Howard v. State*, 286 Ga. 222, 226-227 (686 SE2d 764) (2009) (holding that the exclusion of evidence

implicating another person as a participant in the crimes but not as the shooter was harmless where the evidence against the defendant was strong, including testimony from two eyewitnesses).

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 4, 2013.

*Edward V. C. Silverbach*, for appellant.

*Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Peggy R. Katz, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Benjamin H. Pierman, Assistant Attorney General*, for appellee.