305 Ga. 429
FINAL COPY

S18A1074.  ESPRIT v. THE STATE.
S18A1075.  JONES v. THE STATE.

NAHMIAS, Presiding Justice.

Appellant Brisean Esprit was convicted of felony murder, appellant Mark Jones was convicted of malice murder, and both were convicted of a firearm offense in connection with the shooting death of Maximillion Stevenson. Esprit's sole contention on appeal is that his trial counsel provided ineffective assistance by failing to properly seek admission of statements favorable to Esprit that Jones made during Jones's truncated attempt to enter a guilty plea just before trial. Jones's sole contention is that the trial court erred by overruling his objection to similar transaction evidence. We conclude that both appellants' contentions are meritless, so we affirm the convictions in both cases.[1]

---

[1] Stevenson was killed on September 15, 2008. On January 23, 2009, a Fulton County grand jury indicted both appellants for malice murder, felony murder based on aggravated assault, armed robbery, aggravated assault, and possession of a firearm during the commission of a felony. The indictment also charged Esprit with possession of a firearm by a convicted felon and a second felony murder count based on that firearm offense. At a joint trial from January 3 to 19, 2011, which was interrupted by several days of inclement weather, the jury found Esprit guilty of felony murder based

1. Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. On September 10, 2008, Stevenson and his friend Esprit were involved in the shooting of a 14-year-old boy at Stevenson's apartment complex. After Esprit told Stevenson that he would turn himself in to the police to take responsibility for the shooting, Stevenson, who was a drug dealer, offered to pay for a lawyer for Esprit and gathered $3,000 in cash. On September 15, Stevenson was driving Esprit to the lawyer's office when Stevenson stopped to pick up Esprit's cousin Jones, who was staying with his friend Terrance Robateau.

Robateau testified at trial that when Esprit and Stevenson arrived at his house in College Park, Esprit got out of the front passenger's seat and Stevenson remained in the driver's seat. Robateau, Esprit, and Jones went to the back yard,

on aggravated assault, aggravated assault, and possession of a firearm during the commission of a felony. The jury found Jones guilty of malice murder, felony murder, aggravated assault, and possession of a firearm during the commission of a felony. The appellants were acquitted of the other charges. The trial court sentenced Esprit to serve life in prison for felony murder and five consecutive years for the firearm conviction, merging the aggravated assault count. The court sentenced Jones to serve life in prison for malice murder and five consecutive years for the firearm conviction, merging the aggravated assault count and purporting to merge the felony murder count into the malice murder count (although the felony murder verdict was actually vacated by operation of law, see Malcolm v. State, 263 Ga. 369, 374 (434 SE2d 479) (1993)). Esprit, through new counsel, and Jones, through his trial counsel, both filed timely motions for new trial which they later amended with different counsel. More than six years later, shortly after holding separate evidentiary hearings, the trial court denied the motions. Esprit and Jones filed timely notices of appeal, and their cases were docketed in this Court for the August 2018 term and submitted for decision on the briefs.

where Esprit proposed that he and Jones steal the $3,000 Stevenson was carrying. Jones was wearing a striped shirt, a red bandana, and a red baseball cap. Jones did not have a gun, so Esprit gave him a pistol and then asked if he was scared. Jones answered, "You must don't know about me, 'cause you ain't been to the city in a minute." Jones took the gun from Esprit, removed the clip, wiped the bullets clean, and inserted the clip back into the gun. When Esprit walked back to the front of the house, Robateau tried to convince Jones to abandon the planned robbery, telling him that he was "tripping" and asking him not to rob Stevenson near Robateau's house, but Jones told Robateau to "chill." Robateau then saw Esprit and Jones get into Stevenson's car, with Esprit sitting in the front passenger's seat and Jones sitting behind Stevenson. Shortly after Stevenson drove away, Robateau, who had walked to the front of his house and was talking to his neighbor Larry Richardson, heard two gunshots and a car crash.

According to Robateau, moments later, Jones ran alone back to Robateau's house and into the back yard, but when Robateau looked in the back yard, Jones was gone. About 15 minutes after the shooting, Jones used Esprit's cell phone to call Robateau from a nearby Taco Bell. Jones was recorded on

3

surveillance video from the restaurant, but Esprit was not seen. Jones asked Robateau to pick him up, saying, "[I] done did something with [my] cousin" and "I killed a n**ger, dog." Reiterating that it was Esprit's plan to rob Stevenson of the $3,000, Jones told Robateau that he and Esprit tried to rob Stevenson, that he shot Stevenson after Stevenson refused to give them the money, and that he thought Esprit had fled with the $3,000. Robateau went to pick up Jones, who was now wearing only his pants and a sleeveless undershirt, and drove him to a relative's house.

Robateau's neighbor Richardson testified that he was talking to Robateau in their driveways when he saw a man he identified at trial as Esprit and another man pull up in Stevenson's car near Robateau's house. While Richardson continued to talk to Robateau, Esprit got out of the car, went into the house, came out with a man Richardson identified at trial as Jones, and got into the car with Jones. Esprit, Jones, and the other man then drove away. Moments later, after hearing gunshots, Robateau said to Richardson, "No, they didn't do that." Richardson then saw Esprit, who was wearing a striped shirt, and Jones, who was wearing red, run back toward Robateau's house; Esprit went into Robateau's back yard.

4

Police officers responding to a call about a car accident and possible gunfire arrived at the scene and found Stevenson alone and unconscious in the driver's seat of the car, which had crashed into a tree. He had been shot twice in the back of the head from close range, and he died from his gunshot wounds after being taken to a hospital. The police found two .45-caliber shell casings and a bullet in the car, and ballistics testing later showed that the casings and bullet were fired from a pistol. The police did not find the pistol or any money at the crime scene. Two witnesses who heard the gunshots and saw Stevenson's car crash reported that they saw two men running away from the car together; one of the witnesses added that the two men split up after they ran up the street. During a search of Robateau's house the next day, investigators found a striped shirt, a white t-shirt, a red hat, and a red bandana in a wooded area behind the house; DNA testing later showed that both shirts were stained with Stevenson's blood.

At trial, the State presented similar transaction evidence that Jones and an accomplice committed an armed robbery in Houston, Texas three days after Stevenson was killed. Jones was arrested after that robbery.

Esprit was arrested about six weeks later, on October 29, 2008. During

5

an interview with the police, Esprit initially denied being in Stevenson's car during the shooting, but he eventually admitted that he had been in the car and that Stevenson was carrying $3,000 in his lap. Esprit claimed that when he heard the gunshots, he jumped out of the car and ran back toward Robateau's house.

Esprit's primary defense theory at trial was that Jones was solely responsible for Stevenson's murder and Esprit was merely present at the scene. Jones's primary defense theory was that no forensic evidence connected him to the crimes. Robateau, who had been arrested shortly before trial on a material witness warrant, testified as the State's main witness.

Esprit and Jones both sought to impeach Robateau's credibility by pointing to inconsistencies in his accounts of the events and between his testimony and other evidence. First, in his initial statement to the police, Robateau denied any knowledge of the events surrounding the shooting. In a subsequent interview at the police station, Robateau did not mention Esprit and Jones's encounter in Robateau's back yard during which they planned to rob Stevenson and Esprit gave Jones a pistol; Robateau provided that information only after he was arrested. Instead, Robateau told the police that Jones said as

6

he and Esprit were leaving Robateau's house that Jones and Esprit planned to "get some weed" from Stevenson, and that Jones mentioned a plan to rob Stevenson only in the call after the shooting. Second, Richardson testified that he did not see Esprit and Jones go into the back yard with Robateau, with whom Richardson claimed he talked in their driveways throughout the events. Third, Robateau identified all of the clothes the police found behind his house as those worn by Jones on the day of the shooting, but Richardson testified that Esprit wore the striped shirt. Finally, Robateau testified that Esprit called him to ask for directions before Esprit and Stevenson arrived at the house, and phone records showed that a call from Esprit to Robateau occurred less than two minutes before the 911 call reporting the shooting. Esprit argued that this left insufficient time for the back yard encounter. A detective testified, however, that the cell phone company's clock may not have been synchronized to the clock at the 911 call center, so there could have been a variation in time of a few minutes, potentially making the calls up to five minutes apart.

Neither appellant contends that the evidence was legally insufficient to support his convictions. Nevertheless, in accordance with this Court's practice in murder cases, we have reviewed the record and conclude that, when viewed

in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Esprit and Jones guilty beyond a reasonable doubt of the crimes of which they were convicted.  See Jackson v. Virginia, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979); Vega v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)).  See also OCGA § 16-2-20 (defining parties to a crime); Butts v. State, 297 Ga. 766, 770 (778 SE2d 205) (2015) (explaining that under OCGA § 16-2-20, a jury may infer a common criminal intent from the defendant's presence, companionship, and conduct with another perpetrator before, during, and after the crimes).

## Contention Raised by Esprit

2.     Esprit contends only that his trial counsel provided ineffective assistance by failing to properly seek admission of statements that Jones made when he attempted to plead guilty on the first day of the joint trial.  Because Esprit has failed to show that his trial counsel performed deficiently, we reject his claim.

(a)     Before jury selection on the first day of trial, Jones and the State

8

agreed to a plea deal: in exchange for Jones's truthful testimony against Esprit, he would be allowed to plead guilty to voluntary manslaughter, armed robbery, and possession of a firearm during the commission of a felony, and he would be sentenced to a total of 40 years to serve 35 in prison, with the possibility of parole in 10 to 15 years. After the plea colloquy with Jones, the trial court asked the prosecutor what the evidence would show if the case went to trial. The prosecutor said that the evidence would show that Esprit knew Stevenson had $3,000 with him in the car, that Esprit enlisted Jones to commit an armed robbery of Stevenson, that Esprit handed Jones the gun used to shoot Stevenson, and that Jones shot Stevenson when Stevenson would not give up the money. The prosecutor then asked Jones whether these facts were accurate, and Jones said, "No ma'am."

When the trial court asked Jones what his testimony would be, Jones said, "I committed the crime and Esprit ain't had nothing to do with it." Jones asserted that Esprit had not given him the pistol he used to shoot Stevenson; that he never had a conversation with Esprit about robbing Stevenson; that instead he wanted to buy some crack from Stevenson but did not have any money; and that he told Stevenson to "give up the drugs" and when Stevenson refused, he

9

shot Stevenson. The prosecutor then asked Jones how Robateau knew that Stevenson was carrying $3,000 if Robateau had not witnessed Esprit tell Jones about the money and plan the robbery with Jones. Jones replied that he had told Robateau about the $3,000 "to throw him off." The prosecutor asked how Jones came up with the 3,000 number, and Jones lamely responded, "I just said it . . . I just told him."

At that point, the prosecutor told the trial court that the State could no longer agree to Jones's plea deal. Jones's attorney told the court that he was concerned because his client had admitted guilt on the record, and the court replied that nothing Jones had said during his plea hearing could be used against him or mentioned in any way at trial because the plea had been withdrawn. Esprit's counsel then moved for a severance of Esprit and Jones's trial in order to allow Jones's statements during the plea hearing to be admissible in Esprit's separate trial, arguing that the exculpatory statements were essential to Esprit's defense. The court denied the severance motion. Esprit's counsel made no attempt to admit Jones's plea-hearing statements into evidence at the joint trial that followed.

(b)    Esprit now contends that his trial counsel provided ineffective

assistance by moving for a severance of the joint trial for the purpose of admitting Jones's plea-hearing statements, rather than seeking admission of the statements based on two other legal theories. First, Esprit argues that his counsel should have asked the trial court to revisit the issue of the admissibility of Jones's plea-hearing statements after Robateau testified on direct examination that after the shooting, Jones told him that it was Esprit's plan to rob Stevenson, that Jones and Esprit tried to rob Stevenson, and that Jones thought Esprit had the $3,000. Esprit asserts that the plea-hearing statements were admissible to impeach those statements from Jones to Robateau. Second, Esprit argues that his trial counsel should have sought admission of the plea-hearing statements under the due process rationale of Chambers v. Mississippi, 410 U.S. 284 (93 SCt 1038, 35 LE2d 297) (1973), because the statements bore "persuasive assurances of trustworthiness" and were "critical to [Esprit's] defense." Id. at 302.

To prevail on his ineffective assistance claim, Esprit must prove both that his counsel's performance was professionally deficient and that, but for the unprofessional performance, there is a reasonable probability that the outcome of the proceeding would have been different. See Strickland v. Washington,

11

466 U.S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984). To prove

deficient performance, Esprit must show that his lawyer performed at trial in an

objectively unreasonable way, considering all the circumstances and in the light

of prevailing professional norms. See id. at 687-688.

> This is no easy showing, as the law recognizes a "strong presumption" that counsel performed reasonably, and [Esprit] bears the burden of overcoming this presumption. To carry this burden, he must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not. In particular, "decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course."

Brown v. State, 302 Ga. 454, 457 (807 SE2d 369) (2017) (citations and

punctuation omitted). To prove prejudice, Esprit must show "a reasonable

probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. A reasonable probability is a probability

sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at

694. If Esprit fails to satisfy either part of the Strickland test, we need not

address the other part. See Brown, 302 Ga. at 457.

(c) We begin by addressing Esprit's argument that his trial counsel

provided ineffective assistance by failing to seek admission of Jones's plea-

12

hearing statements as impeachment evidence after Robateau testified at trial. Robateau's hearsay testimony about Jones's statements to him shortly after the shooting was admissible against Esprit under the co-conspirator exception to the hearsay rule. See former OCGA § 24-3-5 ("After the fact of conspiracy is proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all."). See also OCGA § 24-8-801 (d) (2) (E) (co-conspirator exception under the new Evidence Code).[2] Esprit asserts that those out-of-court statements from Jones to Robateau about Esprit's involvement in the crimes could have been impeached by Jones's inconsistent out-of-court plea-hearing statements disclaiming Esprit's involvement.

It is true that Georgia law has long allowed "impeachment of the hearsay declarant." Smith v. State, 270 Ga. 240, 244 (510 SE2d 1) (1998), overruled on other grounds by O'Kelley v. State, 284 Ga. 758 (670 SE2d 388) (2008). It is also true that "[a] witness may be impeached by contradictory statements previously made by him as to matters relevant to his testimony and to the

---

[2] Esprit and Jones were tried in 2011, before Georgia's new Evidence Code went into effect.

13

case[.]" Former OCGA § 24-9-83. See also OCGA § 24-8-801 (d) (1). Under the old and the new Evidence Code, however, a hearsay declarant like Jones could only be impeached "in the same manner that in-court testimony may be impeached," Stinski v. State, 286 Ga. 839, 856 (691 SE2d 854) (2010), that is, "by the introduction of relevant evidence which would be admissible for impeachment purposes if the declarant was in court," Smith, 270 Ga. at 244. See also OCGA § 24-8-806 (new Evidence Code provision establishing similar rule).

Thus, Jones's plea-hearing statements would have been admissible to impeach his prior statements to Robateau only if they would have been admissible to impeach Jones, had he chosen to testify at the joint trial. And that is a crucial "if." Esprit cites no Georgia precedent that clearly and directly would have required the trial court to admit Jones's plea-hearing statements after Robateau testified, had Esprit's trial counsel tried to admit that evidence at that point. Instead, to support an argument that the plea-hearing statements were admissible for the purpose of impeaching Jones's statements to Robateau, Esprit's trial counsel would have had to string together several novel theories.

To begin with, trial counsel would have had to contend that the admission

14

of Jones's self-incriminating statements at his truncated guilty plea hearing was not barred by former OCGA § 17-7-93 (b), which said that a defendant's withdrawn guilty plea "shall not be admissible as evidence against him at his trial."  See, e.g., Shoemake v. State, 213 Ga. App. 528, 529 (445 SE2d 558) (1994).  See also OCGA § 24-4-410 (new Evidence Code provision governing the admissibility of pleas, plea discussions, and related statements).  Perhaps counsel could have persuaded the trial court that former OCGA § 17-7-93 (b) did not preclude a defendant from presenting evidence from an *accomplice's* withdrawn guilty plea to impeach him as a witness or hearsay declarant, but Esprit cites no precedent holding as much.[3]

---

[3] Our own research has found one case in which this Court upheld the State's use of an accomplice's guilty plea, which he had moved to withdraw, to impeach him during a defendant's individual trial.  See Wright v. State, 296 Ga. 276, 282-283 (766 SE2d 439) (2014).  Esprit relies on a similar case, Abercrombie v. State, 297 Ga. App. 522, 525 (677 SE2d 719) (2009), overruled on other grounds by Clay v. State, 290 Ga. 822 (725 SE2d 260) (2012).  In Abercrombie, an accomplice pled guilty and was not available to testify at the defendant's individual trial; the Court of Appeals concluded that the trial court erred in preventing the defendant from introducing evidence of the accomplice's guilty plea to support the defense that the accomplice was solely responsible for the crime.  Wright and Abercrombie, however, did not address any challenge to evidence of the accomplice's plea-hearing statements under former OCGA § 17-7-93 (b), and the guilty plea evidence in those cases was not introduced at a joint trial in which the accomplice was also a co-defendant.

In addition, to seek admission of Jones's plea-hearing statements, Esprit's trial counsel would have had to overcome "the long-standing rule in this state [under the old Evidence Code] that declarations to third persons against the declarant's penal interest, to the effect that the declarant, and not the accused, was the actual perpetrator of the offense, are not admissible in favor of the accused at his trial."  Grell v. State, 291 Ga. 615, 617 (732 SE2d 741) (2012) (citation and punctuation omitted).  Grell and other cases applying the rule may be distinguishable from this case involving

15

Moreover, even assuming that evidence related to a witness's withdrawn guilty plea may be admissible for the limited purpose of impeaching him, the most pertinent precedent indicates that such evidence would be inadmissible when the witness is also a co-defendant in the trial. In Bertholf v. State, 298 Ga. App. 612 (680 SE2d 652) (2009) (physical precedent only), Bertholf initially entered guilty pleas to drug and traffic offenses, but he later withdrew those pleas and was tried with his co-defendant. See id. When Bertholf testified at trial that he had no knowledge of the drugs he was charged with possessing, the trial court permitted his co-defendant to impeach Bertholf with evidence of his withdrawn guilty plea. See id. at 614. The trial court instructed the jury to consider the evidence of the withdrawn plea for purposes of determining Bertholf's credibility as a witness and not as direct evidence of his guilt or innocence. See id. Bertholf moved for a mistrial, but the trial court denied the motion. See id. The Court of Appeals reversed, concluding that former OCGA § 17-7-93 (b) prohibited the co-defendant from using evidence of Bertholf's withdrawn guilty plea against him, and that only a mistrial could have corrected

declarations made at a plea hearing, but Esprit cites no authority making that distinction.

16

the trial court's error in admitting that evidence.  See id. at 615.[4]

That is not all.  Even if Esprit's trial counsel had managed to distinguish and extend precedents to concoct a theory of admission for Jones's plea-hearing statements — in the less than two days between Jones's plea hearing and Robateau's testimony, while counsel was also trying Esprit's case — counsel would have recognized that this evidence was limited in its use and probative force.  Under both the old and the new Evidence Code, "'[a] prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive evidence, and is not limited in value only to impeachment purposes.'"  Robbins v. State, 300 Ga. 387, 391 (793 SE2d 62) (2016)  (quoting Gibbons v. State, 248 Ga. 858, 862 (286 SE2d 717) (1982)).

---

[4]  In a footnote, the Court of Appeals suggested that the co-defendant might have been permitted to impeach Bertholf with his withdrawn plea if the co-defendant had been tried separately.  See id. at 616 n.5 (noting that "[t]he better practice here may have been to try these co-defendants separately, allowing [the co-defendant] to use the plea for impeachment purposes without any resulting prejudice to Bertholf").  But that suggestion was not the holding of the case.  Indeed, the Court of Appeals did not decide any issue regarding severance; the court merely noted in dicta that a pretrial severance "may have been" the appropriate remedy to allow a defendant to use his co-defendant's withdrawn guilty plea for impeachment.  Esprit has not cited (nor have we found) any precedent actually ordering that remedy under circumstances like those presented in *Bertholf* or in this case.  We note in this respect that Esprit has not enumerated error in the trial court's denial of his pretrial motion to sever his and Jones's trials.  Esprit's contention is that his trial counsel was ineffective for not seeking to admit Jones's plea-hearing statements after Robateau's direct examination during the joint trial.  A severance or mistrial at that point would implicate double jeopardy concerns if Jones objected to the admission of his withdrawn plea and did not consent to a mistrial; Esprit does not address those concerns.

17

See also OCGA § 24-8-801 (d) (1) (A).  Jones, however, did not testify at trial and was not subjected to cross-examination, so his prior inconsistent statements at the truncated plea hearing would have been "limited in value only to impeachment purposes."  See, e.g., Brinson v. State, 268 Ga. 227, 227-228 (486 SE2d 830) (1997).  See also OCGA § 24-8-801 (d) (1) (B).  The plea-hearing statements could *not* be used as direct evidence that Esprit did not commit the crimes charged, only to show that Jones had once said something different than what Robateau testified Jones said to him, and their admission would have properly come with a limiting instruction to the jury on that restrictive use.

The value of this impeachment-only evidence was further diminished by its dubious reliability.  During the plea hearing, Jones told a story that was substantially inconsistent with other evidence presented at trial.  Although Esprit had told the police during his brief post-arrest interview that Stevenson had $3,000 in cash in his lap when he drove to Robateau's house — cash that was not found at the crime scene — Jones claimed that he did not plan to rob Stevenson and shot him instead because he refused to give Jones crack cocaine.  Most tellingly, Jones had no explanation as to how Robateau knew that Stevenson had $3,000 if Esprit had not discussed that fact while planning the

18

robbery with Jones in Robateau's back yard; when the prosecutor challenged him on that point, Jones first weakly responded that he had told Robateau about the $3,000 "to throw him off" (thereby admitting a conversation about the money) and then when asked how he came up with the 3,000 number, had no answer, replying "I just said it . . . I just told him."

Indeed, Jones's statements trying to exonerate his cousin Esprit — statements made only after Jones believed he was going to get a good plea deal for himself — were so incompatible with the other evidence that the prosecutor and the trial court refused to allow him to enter a guilty plea. On the other hand, as discussed in Division 1 above, Esprit's trial counsel had plenty of other material to use to directly challenge Robateau's testimony (as opposed to only impeaching Jones's statements to Robateau), including Robateau's own prior inconsistent statements and inconsistencies with Richardson's testimony and with the phone records.

We need not decide whether, if Esprit's trial counsel had made in the trial court the argument that his new counsel has suggested, he could prevail on appeal. A criminal defense attorney does not perform deficiently when he fails to advance a legal theory that would require "an extension of existing precedents

19

and the adoption of an unproven theory of law." <u>Williams v. State</u>, 304 Ga. 455, 458 (818 SE2d 653) (2018). See also <u>Rhoden v. State</u>, 303 Ga. 482, 486 (813 SE2d 375) (2018) (explaining that "'there is no requirement for an attorney to prognosticate future law in order to render effective representation,'" and that "[c]ounsel is not obligated 'to argue beyond existing precedent.'" (citations omitted)); <u>Washington v. State</u>, 271 Ga. App. 764 (610 SE2d 692) (2005) ("[T]he standard for effectiveness of counsel does not require a lawyer to anticipate changes in the law or pursue novel theories of defense." (citation and punctuation omitted)). Moreover, "'[t]he scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel.'" <u>McCoy v. State</u>, 303 Ga. 141, 143 (810 SE2d 487) (2018) (citation omitted). In light of the novel theory that Esprit's trial counsel would have had to develop to seek the admission of Jones's plea-hearing statements during the trial, the limited probative force of that declarant-impeachment-only evidence, and the strong challenges to Robateau's testimony that trial counsel raised using other evidence, it is clear that — even if trial counsel subjectively would have liked to also use the plea-hearing statements — he did not perform deficiently in an objectively unreasonable way. See, e.g.,

20

id.; <u>Walker v. State</u>, 294 Ga. 752, 757 (755 SE2d 790) (2014).

(d)     As for Esprit's claim that his trial counsel provided ineffective assistance because he failed to seek the admission of Jones's plea-hearing statements under the due process rationale of <u>Chambers v. Mississippi</u>, 410 U.S. 284, we conclude that an argument based on <u>Chambers</u>'s reasoning would have been meritless.  In <u>Chambers</u>, the United States Supreme Court concluded that "under the facts and circumstances of [that] case," constitutional due process afforded the defendant the right to introduce evidence, otherwise inadmissible under state evidentiary rules, that someone else committed the crime, because the rejected testimony "bore persuasive assurances of trustworthiness" and was "critical" to the defense.  Id. at 302.  The Court determined that the hearsay statements at issue in that case, which consisted of another person's confessions to three witnesses that he and not the defendant had committed the murder, were made "under circumstances that provided considerable assurance of their reliability."  Id. at 300.  The Court explained that the declarant had made each of his spontaneous confessions to a close acquaintance shortly after the murder, that those confessions were "unquestionably against [the declarant's] interest" and corroborated by other evidence in the case, and that the declarant was

21

present in the courtroom, under oath, and subject to cross-examination about the confessions. See id. at 300-301. In evaluating whether proffered evidence comes within the narrow scope of Chambers, a "trial court must determine whether the value and reliability" of the otherwise inadmissible evidence "outweigh the harm resulting from a violation of the evidentiary rule" excluding the evidence. Drane v. State, 271 Ga. 849, 852 (523 SE2d 301) (1999). See also Grell v. State, 291 Ga. 615, 618 (732 SE2d 741) (2012).

In its order denying Esprit's motion for new trial, the trial court determined that Jones's plea-hearing statements were not reliable, pointing to his inconsistent and nonsensical explanation as to how Robateau knew that Stevenson had been carrying $3,000. Although Jones made the statements under oath before the trial court, those statements were not "unquestionably against" his interest, because he only attempted to exonerate his cousin after he thought he had secured his own plea deal. In addition, the statements were made not spontaneously but years after the crimes, and Jones was unavailable as a witness at the joint trial, so the State could not cross-examine him fully about the statements. Accordingly, the trial court would have been well within its discretion to reject an argument that the exceptional circumstances of Chambers

22

apply here. See, e.g., Drane, 271 Ga. at 853; Hilton v. State, 288 Ga. 201, 204 (702 SE2d 188) (2010); King v. State, 202 Ga. App. 817, 819-820 (415 SE2d 684) (1992). Compare Abercrombie v. State, 297 Ga. App. 522, 525 (677 SE2d 719) (2009) (holding that the exclusion of an accomplice's completed and apparently unquestioned guilty plea was improperly excluded under the Chambers rationale), overruled on other grounds by Clay v. State, 290 Ga. 822 (725 SE2d 260) (2012).[5] Trial counsel therefore did not provide ineffective assistance by failing to make such an argument. See Funes v. State, 289 Ga. 793, 796 (716 SE2d 183) (2011) (explaining that trial counsel's decision not to pursue a meritless issue does not constitute ineffective representation).

Contention Raised by Jones

3. In his sole enumeration of error, Jones contends that the trial court erred by admitting similar transaction evidence that he and an accomplice committed an armed robbery in Houston, Texas, three days after Stevenson's murder. We disagree.

Under the old Evidence Code, it was well settled that evidence of a so-called "similar transaction" was admissible if the State showed that

---

[5] We offer no opinion as to whether Abercrombie was correctly decided.

23

(1) it seeks to introduce the evidence "not to raise an improper inference as to the accused's character, but for some appropriate purpose which has been deemed to be an exception to the general rule of inadmissibility"; (2) "there is sufficient evidence to establish that the accused committed the independent offense or act"; and (3) "there is a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter."

Moore v. State, 290 Ga. 805, 807 (725 SE2d 290) (2012) (quoting Williams v. State, 261 Ga. 640, 642 (409 SE2d 649) (1991)). That test applied "whether the similar transaction occurred before or, as here, after the charged crimes." Whitehead v. State, 287 Ga. 242, 249 (695 SE2d 255) (2010). When considering the admissibility of a similar transaction under the old Evidence Code, the proper focus was on the similarities, not the differences, between the separate acts and the charged crimes. See id.

At a hearing in this case, the prosecutor proffered that the State's similar transaction evidence would show that three days after Stevenson's murder in College Park, Jones and his friend Azell Thrasher intimidated Kerra Sylvester, a drug dealer who knew Thrasher, into providing them with money and a base of operation at her apartment in Houston, Texas; when Sylvester's friend came to her apartment to buy crack cocaine from her, Jones and Thrasher held the

24

friend at gunpoint and attempted to take his debit card until the police eventually intervened. Jones objected to the evidence on the ground that the Houston incident was not sufficiently similar to his charged crimes, but the trial court ruled that the evidence was admissible, noting that Jones could renew his objection at trial. At trial, Jones objected to the evidence on the same ground, and the court again overruled his objection. Sylvester then testified about the armed robbery in Houston, and the court gave a limiting instruction to the jury that the evidence could be considered only for the purposes of showing Jones's motive and bent of mind.[6]

The trial court admitted the evidence of the Houston armed robbery for

---

[6] Jones incorrectly asserts in his brief here that the trial court admitted the similar transaction evidence for the purposes of showing his motive and course of conduct. The record shows that at the hearing on the similar transaction evidence, the State proffered the evidence for those purposes, and the trial court then ruled that the evidence was admissible, subject to a renewed objection at trial. However, the court did not specify in its ruling the purposes for which the similar transaction could be considered by the jury. At trial, the court sua sponte instructed the jury that it could consider the evidence for the limited purposes of showing Jones's motive and bent of mind. See McTaggart v. State, 225 Ga. App. 359, 364-365 (483 SE2d 898) (1997) (concluding that the trial court did not err by failing to specify at the pretrial hearing the purpose for which the similar transaction was admitted, because the court made a determination regarding admissibility under Williams and gave an instruction at trial that limited the jury's consideration of the evidence to legitimate purposes), overruled on other grounds by Wall v. State, 269 Ga. 506, 508-510 (500 SE2d 904) (1998). See also Murphy v. State, 270 Ga. 72, 75 (508 SE2d 399) (1998) (holding that there was no reversible error in the trial court's failure to limit the purposes for which the evidence could be considered to those set forth at the similar transaction hearing, when the defendant failed to request such a specific limiting instruction). Jones did not object to the trial court's limiting instruction, nor does he enumerate it as error on appeal.

appropriate purposes under Georgia law at the time of Jones's trial.[7]  The State

also proffered and then presented sufficient evidence through Sylvester's

eyewitness testimony to establish that Jones committed the independent

offense.[8]

Finally, the evidence that Jones, armed with a gun and acting with an

accomplice, committed an armed robbery against someone involved in the drug

trade just three days after Stevenson's murder was sufficiently similar to the

crimes charged in this case — where Jones was accused of committing an armed

robbery with a gun and an accomplice against a drug dealer.  See Barnes v.

State, 287 Ga. 423, 426 (696 SE2d 629) (2010) ("When similar transaction

evidence is used to show bent of mind, course of conduct, motive or intent, 'a

lesser degree of similarity is required than when such evidence is introduced to

---

[7] Under our old Evidence Code, "courts routinely admitted similar transaction evidence for purposes such as 'bent of mind' or 'course of conduct.'" Matthews v. State, 294 Ga. 50, 53 n.2 (751 SE2d 78) (2013).  The new Evidence Code allows admission of "[e]vidence of other crimes, wrongs, or acts" for purposes "including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  OCGA § 24-4-404 (b).  "Bent of mind" and "course of conduct" are no longer authorized purposes.  See Brooks v. State, 298 Ga. 722, 727 (783 SE2d 895) (2016).

[8] Jones argues that Sylvester's testimony at trial differed from what the State proffered to the trial court, but he failed to object on that ground, and he therefore has forfeited that claim on appeal.  See Arrington v. State, 286 Ga. 335, 342 (687 SE2d 438) (2009).  In any event, "we do not find such dramatic disparity as claimed by [Jones] so as to render the acts inadmissible for the stated purposes."  Meier v. State, 190 Ga. App. 625, 627 (379 SE2d 588) (1989).

prove identity.'" (citation omitted)).  The trial court's finding that there was sufficient similarity between the Houston incident and the crimes charged was not clearly erroneous, and the court did not abuse its discretion in admitting the similar transaction evidence.  See, e.g., Matthews v. State, 294 Ga. 50, 52 (751 SE2d 78) (2013); Johnson v. State, 292 Ga. 22, 25 (733 SE2d 736) (2012).

Judgments affirmed.  All the Justices concur.

Decided March 11, 2019.

Murder. Fulton Superior Court. Before Judge Dempsey.

Steven E. Phillips, for appellant (case no. S18A1074).

Daniel H. Petrey, for appellant (case no. S18A1075).

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Kevin C. Armstrong, F. McDonald Wakeford, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason M. Rea, Assistant Attorney General, for appellee.