NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: February 3, 2026

S25A1056. GRAHAM v. THE STATE.

LaGrua, Justice.

Appellant Travis Santel Graham challenges his convictions for felony murder and possession of a firearm during the commission of a felony in connection with the shooting death of Jeffrey Jequez Franklin.[1] On appeal, Graham asserts that his trial counsel provided ineffective assistance in (1) failing to request a jury charge

---

[1] Franklin was killed on July 5, 2020. On December 18, 2020, a Lowndes County grand jury indicted Graham for felony murder, aggravated assault with a deadly weapon, and possession of a firearm during the commission of a felony. At a trial from January 9 to 12, 2023, the jury found Graham guilty of all charges. The trial court sentenced Graham to serve life in prison with the possibility of parole for felony murder and a consecutive five-year prison term for the firearm possession count. The aggravated assault verdict merged into the felony murder conviction. Graham filed a timely motion for new trial, which he twice amended through new counsel. After two evidentiary hearings in 2024 and 2025, the trial court entered an order denying the motion on March 27, 2025. Appellant filed a timely notice of appeal, the case was docketed in this Court to the August 2025 term, and oral argument was held on August 27, 2025.

on defense of property other than habitation and a related instruction on forcible felony; (2) in failing to object when the trial court did not give a full charge on defense of habitation; and (3) in failing to request a jury charge on Graham's specific character trait for truthfulness. He also raises a cumulative error claim under *State v. Lane*, 308 Ga. 10 (2020). As explained below, these claims fail, and we affirm.

The evidence at trial showed that Graham shot Franklin while Franklin was in the street in front of Graham's home, following an altercation that involved several people outside Graham's home. In the early morning hours of July 5, 2020, Graham was at his home with his girlfriend, his housemate Keyshawn Berrian, and three friends, including Rashad Johnson, for "a get together." At approximately 2:30 a.m., Franklin and several friends, including Johnson's cousin, arrived at Graham's house, looking to join the party, after Johnson's cousin had received directions to Graham's house.

As Franklin and his friends were getting out of their cars in

2

front of Graham's house, Berrian walked outside with Johnson and saw Franklin and his friends approaching the home. After Berrian twice asked Franklin and his friends to leave, they went back toward the road. At that point, Graham came outside and also asked Franklin and his friends to leave. A verbal argument ensued and then the argument escalated to a physical fight. One of the people involved in the fight said "something about a trunk and then a gun." Then Graham went to his car, which was parked in the driveway, "grabbed his gun" from the trunk, and fired a "warning shot." Franklin and his friends started running away. Graham fired a second shot, hitting Franklin on his left side, under his arm. Franklin ran across the street and collapsed in a neighbor's yard, where he died as a result of the single gunshot wound. A neighbor called 911, and Graham got in his car and drove away before police officers arrived. Graham's gun was not recovered.

At trial, Graham testified as follows: when Graham first walked outside, he saw a "bunch of unknown people" standing around in the street in front of his house and trash "that was in the

3

street." Graham loudly asked the group to leave and told them to pick up the trash that they had strewn about. Franklin and his friends said they did not have to leave, and Graham got into a verbal argument with them. Graham and one of Franklin's friends were continuing to argue when two of the people with Franklin "started taking off their jackets" and formed a semi-circle around Graham. Graham saw a gun handle in the waistband of one of the men with whom he was arguing. One of the men in the group threatened to beat Graham up and then slammed Graham to the ground. Then, several men started hitting and "stomping" him. Berrian came to help Graham, and some of the men with Franklin started hitting Berrian. Graham got up, "went to the yard [and] kept telling everybody to leave," and then went to the trunk of his car, which was parked in the driveway, and took his rifle out of the car. Graham walked to the end of the driveway, telling everybody to leave, and he "let off a warning shot." Franklin and his friends started to scatter and run in different directions but then started coming back. Graham then fired a second shot. When Graham fired the second

4

shot, Franklin was coming towards him and pushed Graham's girlfriend out of the way as he approached. At the time Franklin was coming toward Graham, Franklin was saying "I'm gonna fight. I'm gonna fight. I'm gonna get him. I'm gonna get him." Other individuals with Franklin were also coming toward Graham. Graham fired the shot "because [he] was scared, and [he] knew, like, one of them had the gun already." Graham was not trying to shoot or kill Franklin but just wanted everyone to leave.

Graham presented two witnesses at trial who each testified that Graham did not have a reputation for violence and did have a reputation for truthfulness.

1. Graham contends that his trial counsel was constitutionally ineffective in three respects related to jury instructions. Because Graham has not shown that his counsel performed deficiently, his claims fail.

To prevail on a claim of ineffective assistance of counsel, an appellant must prove deficient performance and resulting prejudice. See *Strickland v. Washington*, 466 US 668, 687 (1984). To establish

deficient performance, an appellant must show that his attorney's acts or omissions were objectively unreasonable, considering all the circumstances at the time and in the light of prevailing professional norms. See id. at 687–90. Decisions regarding trial tactics and strategy, which include decisions about which jury instructions to request, may form the basis for an ineffectiveness claim only if such decisions are so patently unreasonable that no competent attorney would have followed the same course. See *Copney v. State*, 322 Ga. 794, 797–98 (2025). To establish the required prejudice, the defendant must show that, but for his attorney's unprofessional errors, there is a "reasonable probability" that the result of the proceeding would have been different. *Strickland*, 466 US at 694. "If either *Strickland* prong is not met, this Court need not examine the other prong." *Copney*, 322 Ga. at 798 (quotation marks omitted).

(a) Graham first contends that his trial counsel should have requested a jury instruction on defense of property other than habitation under OCGA § 16-3-24. That statute provides that a person is justified in using force against another person when he

6

reasonably believes that such force "is necessary to prevent or terminate such other's trespass on or other tortious or criminal interference with real property other than a habitation or personal property" and that force "intended or likely to cause death or great bodily harm" is not justified "unless the person using such force reasonably believes that it is necessary to prevent the commission of a forcible felony." OCGA § 16-3-24(a), (b).[2] "Forcible felony" is defined in OCGA § 16-1-3(6) as "any felony which involves the use of threat of physical force or violence against any person."

Graham contends that an instruction under OCGA § 16-3-24

---

[2] In full, OCGA § 16-3-24 provides:
(a) A person is justified in threatening or using force against another when and to the extent that he reasonably believes that such threat or force is necessary to prevent or terminate such other's trespass on or other tortious or criminal interference with real property other than a habitation or personal property:
(1) Lawfully in his possession;
(2) Lawfully in the possession of a member of his immediate family; or
(3) Belonging to a person whose property he has a legal duty to protect.
(b) The use of force which is intended or likely to cause death or great bodily harm to prevent trespass on or other tortious or criminal interference with real property other than a habitation or personal property is not justified unless the person using such force reasonably believes that it is necessary to prevent the commission of a forcible felony.

7

was authorized because, when he shot Franklin, he was "repelling" a trespass in his yard to prevent the commission of a forcible felony. At the motion-for-new-trial hearing, trial counsel was asked about whether he had a strategic reason for not asking for a charge under OCGA § 16-3-24, and trial counsel testified that he did not have a specific memory of why he did not ask for the charge. However, trial counsel did testify that he considered the case to be about self-defense; that he did not "really see it as a defense of habitation case"; and that the trial court charged on self-defense, as well as on the right to "stand your ground" and trespassing.[3]

Additionally, Graham has not shown that trial counsel's failure to seek a charge under OCGA § 16-3-24 was patently unreasonable. A competent attorney could have reasonably concluded that the better strategy was to focus on a single, and straightforward,

---

[3] The record reflects that the trial court did fully instruct the jury on justification based on defense of self or others. The trial court also charged on the elements of the offense of criminal trespass, including that a person commits that offense if he remains on another person's property after receiving notice to leave.

justification defense—that Graham reasonably believed that Franklin had a gun and was threatening to inflict great bodily harm on Graham, rather than an alternative theory of justification that involved additional statutory elements and required additional proof to satisfy those elements. See, e.g., *Beard v. State*, 317 Ga. 842, 850 (2023) (concluding that counsel's decision to pursue a "straightforward justification defense" instead of defense of habitation was not patently unreasonable). See also *Hood v. State*, 303 Ga. 420, 426 (2018) (concluding that there was no plain error in failing to give additional jury charges based on defense of property where, in part, the trial court's other instructions provided the jury with "sufficient direction … to intelligently consider" appellant's justification defense (quotation marks omitted)). Thus, Graham has failed to show that his trial counsel performed deficiently, and we conclude that this claim fails.

(b) Graham also asserts that his trial counsel performed deficiently in failing to object when, after the trial court agreed to

give a charge on defense of habitation under OCGA § 16-3-23,[4] a full charge was not given.[5] When asked why he did not object to the failure to give a charge on defense of habitation, trial counsel explained that the trial court did charge on self-defense "and so that was the basic thought," and as noted above, trial counsel also testified that he did not consider the case to involve defense of

---

[4] OCGA § 16-3-23 provides:
A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to prevent or terminate such other's unlawful entry into or attack upon a habitation; however, such person is justified in the use of force which is intended or likely to cause death or great bodily harm only if:
(1) The entry is made or attempted in a violent and tumultuous manner and he or she reasonably believes that the entry is attempted or made for the purpose of assaulting or offering personal violence to any person dwelling or being therein and that such force is necessary to prevent the assault or offer of personal violence;
(2) That force is used against another person who is not a member of the family or household and who unlawfully and forcibly enters or has unlawfully and forcibly entered the residence and the person using such force knew or had reason to believe that an unlawful and forcible entry occurred; or
(3) The person using such force reasonably believes that the entry is made or attempted for the purpose of committing a felony therein and that such force is necessary to prevent the commission of the felony.
[5] The trial court's sole reference to defense of habitation consisted of the following: "The defense of justification can be claimed when the person's conduct is justified under the laws of this state for self-defense, defense of others, and defense of habitation."

10

habitation.

On appeal, Graham contends that defense of habitation was an applicable theory because the fight with Franklin and his friends occurred in the curtilage of Graham's home and the curtilage is treated as part of the dwelling itself for certain purposes. It is generally true that a search warrant that authorizes the search of a home also "extends by implication to areas within the curtilage of the dwelling." *Gebhardt v. State*, 307 Ga. 587, 599 (2019). However, Graham has not cited any cases in which the "curtilage" was considered a part of "habitation" for the purpose of a defense of habitation instruction, and we have found none. To the contrary, we have held that a justification defense based on the defense of habitation is not available "where there is no evidence that the victim was attempting to enter or attack the habitation at the time he was injured." *Jackson v. State*, 318 Ga. 393, 399 (2024). And Graham notably does not claim, nor does the evidence support, that

Franklin was trying to enter Graham's home.[6]

It is well settled that trial counsel "does not perform deficiently when he fails to advance a legal theory that would require an extension of existing precedents and the adoption of an unproven theory of law." *Esprit v. State*, 305 Ga. 429, 438 (2019) (quotation marks omitted). See also *Copney*, 322 Ga. at 808–09 (holding that trial counsel's failure to raise an objection to a portion of a jury instruction that was based on a novel legal theory was not deficient). Because Graham has not identified any case law supporting extension of the defense of habitation to the curtilage of a home and does not contend that Franklin was attempting to enter the habitation, we conclude that Graham has failed to show that his trial counsel performed deficiently in an objectively unreasonable way in failing to ask for a jury instruction on defense of habitation based on the shooting occurring in Graham's yard. See *Esprit*, 305 Ga. at 438.

---

[6] Given our resolution of this claim, we need not address whether the fight occurred in the curtilage. Compare *Reese v. State*, 317 Ga. 189, 201–02 (2023) (discussing definition of curtilage).

(c) Graham also contends that his trial counsel performed deficiently in not objecting when the trial court failed to give a specific jury charge on Graham's character trait for truthfulness. At the charge conference, the trial court stated that it would give "[Suggested Pattern Jury Instruction §] 1.31.10,[7] credibility of witnesses." It also stated, "Evidence was presented as to the defendant's character, so we will give 1.37.10.[8] And I believe we

---

[7] At the time of Graham's trial in January 2023, Suggested Pattern Jury Instructions, Vol. II (Criminal) § 1.31.10 (4th ed.; updated Aug. 2022) ("PJI") provided:

> The jury must determine the credibility of the witnesses. In deciding this, you may consider all of the facts and circumstances of the case, including the witnesses' manner of testifying, [their intelligence], their means and opportunity of knowing the facts about which they testify, the nature of the facts about which they testify, the probability or improbability of their testimony, their interest or lack of interest in the outcome of the case, and their personal credibility as you observe it.

[8] At the time of Graham's trial in January 2023, PJI § 1.37.10 provided:

> You have heard evidence of the (character of the defendant) (character of the defendant for a particular trait, more specifically _____) in an effort to show that the defendant likely acted in keeping with such character or trait at pertinent times or with reference to issues in this case. This evidence has been offered in the form of (the opinion of (an)other witness(es)) (reputation) (specific instances of conduct of the defendant showing such trait). You should consider any such evidence along with all the other

13

agreed to the character that is to be addressed in the charge is that of nonviolence."

At the conclusion of the charge conference, trial counsel indicated that he had no objections at that time and would reserve any objections, and at the conclusion of the jury instructions, trial counsel again stated, "We reserve ours."[9] As indicated at the charge conference, the trial court charged the jury on testimony regarding Graham's character, focusing on the specific character trait of non-violence and stating that the jury could consider Graham's good character in considering whether he was guilty of the charges against him:

> You have heard evidence of the character of the defendant as it relates to non-violence in an effort to show that the defendant likely acted in keeping with such character or trait at pertinent time or with reference to the issues in

> evidence in deciding whether or not you have a reasonable doubt about the guilt of the defendant.

Suggested Pattern Jury Instructions, Vol. II (Criminal) § 1.37.10 (4th ed. 2007; updated Aug. 2022).

[9] OCGA § 17-8-58, which became effective for trials conducted after July 1, 2007, requires parties to state their specific objection and the grounds therefore before the jury retires for deliberation and changed the prior practice that permitted counsel to reserve objections pending a motion for new trial or appeal. See *State v. Kelly*, 290 Ga. 29, 31 (2011).

14

this case. This evidence has been offered in the form of opinions of witnesses. You should consider any such evidence, along with all of the other evidence, in deciding whether or not you have a reasonable doubt about the guilt of the defendant. Good character is not just a witness credibility issue, nor is it an excuse for crime. However, you may consider it as weighing on the issue of whether or not the defendant is guilty of the charges in this indictment.

Additionally, the trial court thoroughly instructed the jury in the preliminary and final instructions on the credibility of witness. Specifically, in its final charge, the trial court gave the following instruction:

The jury must determine the credibility of the witnesses. In deciding this, you may consider all of the facts and circumstances of the case, including the witness's manner of testifying, their means and opportunity of knowing the facts about which they testify, the nature of the facts about which they testify, the probability or improbability of their testimony, their interest or lack of interest in the outcome of the case, and their personal credibility as you observe it.

At the motion for new trial hearing, trial counsel could not recall why he did not ask for a charge on the specific character trait for truthfulness. And, given that the crux of Graham's defense was self-defense, a reasonable attorney could have concluded that the

15

charge on good character evidence that was given—focusing on the trait of non-violence—as well as the general charges on witness credibility, adequately informed the jury that it was authorized to credit Graham's testimony in determining whether he was justified in shooting Franklin. See *Parker v. State*, 305 Ga. 136, 138 (2019) (concluding that the giving of the pattern jury charge on good character evidence, which did not specify a particular character trait, "properly explained how character evidence ought to be considered by the jury" (quotation marks omitted)). See also *Huber v. State*, 319 Ga. 78, 84–85 (2024) (concluding that trial counsel's failure to request specific jury instruction was not deficient performance because the instructions given by the trial court sufficiently covered the legal principles involved in the omitted charge); *Sauder v. State*, 318 Ga. 791, 814 (2024) (concluding that trial counsel did not perform deficiently in failing to ask for specific jury instructions where the jury instructions given adequately covered the legal principles involved in the omitted charge). Therefore, Graham has not established that it was patently

unreasonable to forgo objecting to the failure to give an additional charge on the character trait for truthfulness, and thus, this claim of ineffectiveness fails.

2. Finally, Graham asserts that the cumulative error rule of *State v. Lane*, 308 Ga. 10, 14 (2020), applies. However, because he has not raised any claim of trial error, either directly or as plain error, that cumulative error rule does not apply. See *Lane v. State*, 312 Ga. 619, 625 (2021). Moreover, because we have neither found nor assumed any instance of deficient performance, there is no *Strickland* prejudice to consider collectively. See *Lopez v. State*, 318 Ga. 664, 672 n.7 (2024). See also *Schofield v. Holsey*, 281 Ga. 809, 811 n.1 (2007), overruled on other grounds by *Lane*, 308 Ga. at 17. Accordingly, this claim is without merit.

*Judgment affirmed. All the Justices concur.*

17